UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
SOUTHERN DIVISION

| | |
|---|---|
| PATIENTPOINT NETWORK SOLUTIONS, LLC, an Ohio Limited Liability Company<br><br>               Plaintiff,<br><br>       v.<br><br>CONTEXTMEDIA, INC., an Illinois Corporation, and CHRISTOPHER HAYES, an individual<br><br><br>               Defendants. | Civil Action No. 1:14 cv 226<br><br>Judge Black |

## DEFENDANT CONTEXTMEDIA'S ANSWER TO COMPLAINT

Defendant ContextMedia, Inc., ("ContextMedia") for its answer to the complaint of

Plaintiff PatientPoint Network Solutions, LLC, ("PatientPoint") states as follows:

## NATURE OF ACTION

1.     This is a case of misappropriation of trade secrets, unfair competition, breach of contract and tortious interference with contract by a former employee of PatientPoint and his new employer Context, a direct competitor of PatientPoint, under Ohio statute and common law. Until his separation on August 28, 2013, Hayes was an Executive Vice President, Business Development specialist at PatientPoint. PatientPoint has recently learned that since the time Hayes separated from PatientPoint, and *after* he became employed by Context, Hayes accessed numerous files containing highly sensitive and confidential PatientPoint information critical to PatientPoint's marketing and business development strategies.

**Answer:**     ContextMedia denies the first sentence of this paragraph. Upon

information and belief, ContextMedia denies that Mr. Hayes committed any improper acts as

alleged in this paragraph. ContextMedia admits that Mr. Hayes currently works for

ContextMedia. ContextMedia lacks knowledge or information sufficient to form a belief about

the truth of the remaining allegations of paragraph 1.

2.     PatientPoint and Context are direct competitors engaged in the business of delivering health-related educational material in print and digital format (including related services) to physician practices throughout the United States. PatientPoint and Context provide

ACTIVE 200737155v.3

the content and all hardware and software used to display the content to the physician practices, at the "point-of-care," free of charge. PatientPoint and Context earn their revenue by charging sponsors who place ads that are included within PatientPoint's and Context's educational content.

> **Answer:** ContextMedia admits the allegations of paragraph 2.

3. PatientPoint is currently in litigation with Context in this District. In that litigation, PatientPoint has alleged a claim for misappropriation of PatientPoint's trade secrets, among other claims, based upon Context's conduct in intentionally accessing, copying and downloading all of the files contained on a PatientPoint media player that was wrongfully shipped to Context's offices. PatientPoint recently learned that Context hired Hayes and believes it did so to further compete unfairly with PatientPoint in the point of care industry.

> **Answer:** ContextMedia admits that PatientPoint is currently in litigation with ContextMedia in the Southern District of Ohio, that PatientPoint has alleged a claim for misappropriation of PatientPoint's trade secrets in that litigation, and that ContextMedia hired Christopher Hayes in January 2014. ContextMedia denies the remaining allegations of paragraph 3.

4. Until his termination on or about August 28, 2013, Hayes was a key employee responsible for marketing and selling PatientPoint's point-of-care network and services to sponsors. In connection with his dealings with PatientPoint's sponsorship clients, Hayes had access to highly confidential information and trade secrets relating to PatientPoint's current and future business models, research methodology, sponsorship confidential information, sponsorship acquisition and pricing strategy and revenue structure, among other things.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the exact contours of Mr. Hayes's employment relationship with PatientPoint. The remaining allegations—regarding whether information was "confidential" or constituted "trade secrets"—constitute legal conclusions to which no answer is required. To the extent an answer is required, ContextMedia denies those allegations of paragraph 4.

5. Forensic examination of Hayes's PatientPoint laptop has revealed that after Hayes separated from PatientPoint, Hayes accessed PatientPoint's confidential and proprietary information pertaining to its current and potential pipeline of sponsor accounts, communicated with Context about his PatientPoint accounts that he wanted to add to his Context portfolio and reach out to "immediately," accessed Context's Wi-Fi network and its cloud-based "Google

2

Apps" account using his PatientPoint computer, accessed his Context e-mail account from his PatientPoint computer and attached over *twenty* portable USB flash drive devices to his PatientPoint computer.

**Answer:**    ContextMedia admits that Mr. Hayes requested that he be given a number

of accounts when he joined ContextMedia, only some of which were accounts that he was

actually assigned at ContextMedia. To its understanding, only some of the accounts requested by

Mr. Hayes were accounts that he was assigned while at PatientPoint. ContextMedia lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations

of paragraph 5, but forensic investigation into those issues continues.

6.     Forensic examination also has revealed that data was deleted or moved from the PatientPoint computer before it was returned to PatientPoint for forensic examination, thereby destroying potentially discoverable information related to PatientPoint's allegations of Hayes's and Context's misappropriation and use of PatientPoint's confidential information. Several files appear to have been deleted or moved the day before Hayes acknowledged receiving written notice from PatientPoint to preserve all potential evidence in this matter.

**Answer:**    ContextMedia admits that some data appears to have been deleted or

moved from Mr. Hayes's PatientPoint computer before it was returned to PatientPoint for

forensic examination. ContextMedia denies the remaining allegations.

7.     Hayes executed a Teammate (Employee) Agreement with PatientPoint in July 2013 (the "Agreement"). The Agreement prohibits Hayes from using or disclosing PatientPoint confidential information or trade secrets. The Agreement also contains certain restrictive covenants that prohibit Hayes from competing with PatientPoint—including by being employed by Context, for a period of one (1) year following the termination of his employment. The Agreement also contains a non-solicitation provision that prohibits Hayes from soliciting, diverting, or taking away any of the business, customers or patronage of PatientPoint for the same one-year period.

**Answer:**    ContextMedia understands that Mr. Hayes executed an Employee

Agreement with PatientPoint in July 2013, 14 months after he began working for PatientPoint,

and approximately one month before he was terminated. ContextMedia further states that the

interpretation of the Employment Agreement is a legal conclusion to which no answer is

ACTIVE 200737155v.3

required. To the extent an answer is required, ContextMedia denies those allegations of

paragraph 7.

8.      Notwithstanding its current standing as a defendant in trade secret misappropriation litigation with PatientPoint, and notwithstanding Hayes's non-compete obligations to PatientPoint, Context hired Hayes as "Director of Strategic Sponsorships" in December 2013. Given the extent of Hayes's improper use of PatientPoint's confidential information and the similarities in his new role at Context, PatientPoint has compelling reason to believe Hayes is using PatientPoint confidential information to build and refine its current and future products, enhance Context's competitive messaging and solicit key PatientPoint sponsors and strategic accounts.

**Answer:**      ContextMedia admits that it hired Mr. Hayes as "Director of Strategic

Sponsorships." ContextMedia denies the remaining allegations and insinuations of paragraph 8.

9.      Upon discovering that Hayes had begun employment with Context, PatientPoint wrote to Hayes in late February 2014, demanding the return of Hayes's PatientPoint laptop and iPad, reminding him of his continuing obligations under the Agreement and demanding assurances that he would comply with those obligations.

**Answer:**      ContextMedia admits that PatientPoint's outside counsel wrote Mr. Hayes

a letter in late February 2014, regarding certain issues. That letter, being in writing, speaks for

itself. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of

the allegation that PatientPoint sent its letter "[u]pon discovering that Hayes had begun

employment with Context."

10.      At the same time it wrote to Hayes, PatientPoint also notified Context's litigation counsel in writing, to inform Context of Hayes's contractual obligations. PatientPoint also notified Context that PatientPoint believed Hayes still possessed his PatientPoint laptop.

**Answer:**      ContextMedia admits that PatientPoint notified ContextMedia's litigation

counsel in writing of Mr. Hayes's purported contractual obligations and notified ContextMedia

that PatientPoint believed Mr. Hayes possessed his PatientPoint laptop computer.

11.      Since the time PatientPoint wrote to Hayes and demanded return of its equipment, Hayes accessed at least twenty documents from his PatientPoint-issued laptop that contained a significant amount of PatientPoint confidential information and trade secrets. Forensic examination has also revealed that since the time Hayes began working for Context, Hayes

ACTIVE 200737155v.3

accessed versions of a key sales pipeline document from his laptop and from an external storage device he attached to the laptop, communicated with Context employees regarding information about where PatientPoint is "vulnerable" and what it "struggles with," provided Context with "competitive intelligence" about Context and accessed Context's Wi-Fi network using his PatientPoint laptop.

**Answer:**        ContextMedia admits that Mr. Hayes communicated with ContextMedia

employees regarding non-confidential views of PatientPoint's struggles and vulnerability in a

"high level" competitive intelligence document. ContextMedia lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations of paragraph 11.

12.     Hayes has accessed and has likely used, transferred and/or copied a significant number of PatientPoint documents onto multiple portable electronic storage devices since the commencement of his employment with Context. Given the nature and extent of his activities, the only reasonable conclusion is that he is using and/or disclosing PatientPoint confidential information and trade secrets to actively solicit business from PatientPoint's sponsors on behalf of Context and to otherwise unfairly compete against PatientPoint.

**Answer:**        ContextMedia denies the allegations of paragraph 12.

13.     After it received notice from PatientPoint regarding Hayes's non-compete obligations to PatientPoint, Context has not responded or provided any assurances with respect to Hayes's employment. Hayes and Context's conduct is especially concerning to PatientPoint given that PatientPoint and Context are currently engaged in litigation based upon PatientPoint's allegations of unfair competition and misappropriation of trade secrets by Context.

**Answer:**        ContextMedia admits that it is currently engaged in litigation with

PatientPoint based upon PatientPoint's allegations of unfair competition and misappropriation of

trade secrets. ContextMedia denies the remaining allegations of paragraph 13.

14.     Thus, in order to mitigate additional harm and maintain the status quo until the full extent of Hayes's and Context's wrongful conduct can be discovered, PatientPoint seeks injunctive relief prohibiting Hayes and Context from using or disclosing any documents or information of PatientPoint for any purpose. PatientPoint also seeks an injunction, until further order of the Court, prohibiting Hayes from continuing employment with Context based on Hayes's non-competition agreement and the likelihood of Hayes further disclosing and/or using PatientPoint's trade secrets to or for the benefit of Context. Finally, PatientPoint also seeks damages based on (a) Hayes's and Context's misappropriation and misuse of PatientPoint's confidential and proprietary information, including its trade secrets; (b) Hayes's breach of the non-competition and non-solicitation obligations contained in his employment agreement and Context's tortious interference with that agreement; and (c) potential spoliation of evidence

ACTIVE 200737155v.3

necessary to allow PatientPoint to determine the scope of Hayes's and Context's conduct. Given the willful and malicious nature of Defendants' conduct, PatientPoint also seeks recovery of exemplary damages, its attorneys' fees and its costs of suit, to the fullest extent under the law.

      **Answer:**      ContextMedia admits that PatientPoint seeks such relief but denies that

PatientPoint is entitled to any relief.

## THE PARTIES

      15.      PatientPoint is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio. PatientPoint's sole member is PatientPoint Holdings, Inc., a Delaware corporation with its principal place of business in Ohio.

      **Answer:**      ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 15.

      16.      Hayes is an individual whose domicile is in Dublin, Pennsylvania. Hayes is currently employed by Context as its Director of Strategic Sponsorships.

      **Answer:**      ContextMedia admits the allegations of paragraph 16.

      17.      ContextMedia is an Illinois corporation which, upon information and belief, is incorporated under the laws of the state of Illinois.

      **Answer:**      ContextMedia admits the allegations of paragraph 17.

## JURISDICTION AND VENUE

      18.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

      **Answer:**      ContextMedia admits the allegations of paragraph 18, based on

PatientPoint's allegations concerning the citizenship of the parties, and admits that PatientPoint

is seeking in excess of $75,000, but denies that PatientPoint is entitled to any damages.

      19.      This Court has personal jurisdiction over Hayes because this action arises out of Hayes [sic] violation of a contract executed in Ohio, and because Hayes purposefully availed himself of the benefits and protection of Ohio law by traveling to Ohio in connection with his employment at PatientPoint. U.S.C.A. Const. Amend. 14; Const. Art. 1, § 6; Ohio R.C. § 2307.382.

ACTIVE 200737155v.3

**Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 19.

20.        Context purposefully availed itself of the benefits and protection of Ohio law by transacting business in this state and engaging in the foregoing tortious acts with respect to PatientPoint's contractual relationships in Ohio.

**Answer:**        ContextMedia admits that it availed itself of the benefits and protections

of Ohio law by transacting business in the state. ContextMedia denies the remaining allegations

of paragraph 20.

21.        Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2) because a substantial part of the events giving rise to PatientPoint's claims occurred in Ohio.

**Answer:**        ContextMedia admits the allegations of paragraph 21.

## GENERAL ALLEGATIONS

### —PATIENTPOINT'S BUSINESS—

22.        PatientPoint is, among other things, engaged in the business of "point of care" education, that is, delivering educational, health-related content to physician practices through waiting rooms or examination rooms throughout the United States. Over the last 25 years, PatientPoint has been one of the leading companies in the point-of-care industry and one of the primary innovators in the business of delivering health-related educational content directly to physician offices at the point of care.

**Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 22.

23.        PatientPoint's educational offerings are broadcast to or available in print in physician waiting rooms and medical examination rooms around the country (collectively, the "Practices"). More than 61,000 primary care and specialty doctors and more than 700 hospitals subscribe to PatientPoint's content.

**Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 23.

24.        PatientPoint provides its physician practice members with a media player and flat-panel television that displays their content in physician waiting rooms. The media player contains PatientPoint's content and software that allow PatientPoint's content to be displayed

and updated through an Internet connection managed by PatientPoint's home offices. PatientPoint also provides brochures and other print-based content to practices that are displayed in waiting rooms and exam rooms.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 24.

25.     PatientPoint provides health-related educational content in a number of subject areas, including without limitation, rheumatology, diabetes, and cardiology. PatientPoint provides its specialized content through the following networks: the Arthritis Care Network, or "ACN" (rheumatology) and the Primary Care Network, or "PCN" (diabetes and cardiology).

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 25.

26.     PatientPoint provides its content to the vast majority of Practices free of charge. Rather than receiving its funding from the Practices where its content is placed, PatientPoint's funding comes in the form of sponsorships from organizations and companies who support and actively encourage patient health education. A significant portion of PatientPoint's sponsorship funding comes from health-focused and consumer facing companies seeking to educate patients about medications that address conditions treated by physicians in PatientPoint's networks. Sponsorship funding is primarily based upon the number of Practices and physicians using PatientPoint's content on a monthly basis.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 26.

## —PATIENTPOINT'S SPONSORSHIP STRATEGY—

27.     PatientPoint's method of identifying and onboarding sponsors can take years to develop. PatientPoint first identifies sponsor companies and the brands such companies are seeking to market. In some cases, PatientPoint identifies the advertising agencies the sponsor companies work with to determine whether the representative companies are seeking to expand their brands' footprint at the point-of-care. PatientPoint then determines the marketing strategies and budgets employed by the sponsor companies to ascertain the proposed advertising strategy to be included in PatientPoint's educational content.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 27.

28.     PatientPoint also conducts research on its target sponsor brands to determine information regarding the physician practices and patient population such brands are seeking to

ACTIVE 200737155v.3

pursue; the brands' budgets and sales plans, which can be dependent on a number of factors, including evolving marketing strategies, industry regulations and patent expiration; the brands' exclusivity preferences—that is, the extent they are willing to place ads alongside a competitor's ads—and overall marketing budgets and willingness to invest in point-of-care advertising.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 28.

29. Finally, PatientPoint conducts industry-specific research or Return on Investment ("ROI") propositions to brands, which is an extremely complex and specific calculation that is honed over several years based upon computation methodologies, research on brands' marketing budgets and strategies and other proprietary information.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 29.

30. All of the foregoing information takes months, and sometimes years, to research and compile. After PatientPoint thoroughly vets, collects and assembles its research, it is then able to design individualized proposals that target each sponsor brand and provide key information about PatientPoint's physician networks and patient population.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 30.

31. If a brand decides to invest with PatientPoint, it executes a confidential contract, the negotiation and terms of which are not disclosed outside of PatientPoint and the brand.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 31.

32. To reach the brands, PatientPoint hires sales/marketing professionals and provides these employees with key information regarding PatientPoint's brands, the size and scope of its physician networks, the target patient population of the physicians in PatientPoint's networks and its revenue and growth strategy, among other things. PatientPoint provides this information to its employees to allow them to target their sales efforts on those companies who will most value the service and content PatientPoint offers to the Practices in its member network.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 32.

9

33.     PatientPoint's sales personnel have access to confidential information relating to the Practices in PatientPoint's networks; PatientPoint's pricing and sales information; contractual terms with sponsors; research and information on the rules and regulations governing its sponsors; strategies regarding patient education on particular brands; strategies on how to ensure patient adherence to the brands and contact information for sponsors and potential sponsors. Much of this information is maintained and accessed through private and secure, remote access, file servers and web-based portals (e.g. Salesforce.com) and business software applications that generate reports and spreadsheets and other compilations accessible through password protected log-in authorizations.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 33.

34.     In order to effectively compete in the marketplace, PatientPoint has invested substantial time, effort, money and other resources cultivating its sponsor relationships and gaining insight into sponsor regulatory and other requirements, needs, habits and preferences. Through these and other efforts, PatientPoint has gained key insights with respect to regulations, preferences and the treatment strategies of PatientPoint's physician Practices in order to maintain, foster and strengthen its sponsor relationships. In addition, personnel in PatientPoint's sales operations work closely with sponsors to effectively promote and market their brands to PatientPoint's various networks.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 34.

35.     PatientPoint invests heavily in its confidential information and sponsor relationships because they are crucial good will to the Company's stability, growth and competitive advantage. As one of the oldest companies in the point of care industry, PatientPoint has expended significant time and money to discover and refine this information.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 35.

### —PATIENTPOINT'S COMPETITION WITH CONTEXT—

36.     Context was founded in approximately 2007, almost twenty years after PatientPoint began doing business in the point-of-care industry. Initially, Context focused on diabetes education but, like PatientPoint, began focusing on rheumatology and primary care in approximately early 2011.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegation of when PatientPoint began doing business. ContextMedia

10

ACTIVE 200737155v.3

admits the remaining allegations of paragraph 36.

37.     PatientPoint and Context are direct competitors. Like PatientPoint, Context delivers educational, health-related content to physician practices at the point of care, focusing on diabetes, rheumatology and cardiology (amongst other specialties). Context also does not charge its physician practices for its content, but derives its revenue from pharmaceutical and other companies who display their advertising in between segments of educational health-related programming.

**Answer:**     ContextMedia admits the allegations of paragraph 37 except that it denies

doing so "[l]ike PatientPoint" and denies that it never charges physicians for its content.

38.     PatientPoint and Context, therefore, compete in two critical respects: (1) they target member Practices who specialize in rheumatology, diabetes and cardiology (amongst other specialties) to join their respective networks; and (2) they market their point-of-care product to pharmaceutical and other companies who sell treatments addressing the rheumatoid, diabetic, cardiac and other conditions treated by physicians in their respective networks.

**Answer:**     ContextMedia admits the allegations of paragraph 38.

39.     Frequently, PatientPoint and Context target the same Practices and sponsors given the overlap in the specialties represented in their respective networks.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of this paragraph.

40.     In August 2012, PatientPoint instituted litigation against Context in a case entitled *Healthy Advice Netvvorks, LLC, nlk/a PatientPoint v. ContextMedia, Inc.,* Case No. 12-CV-610, pending before the Honorable Susan Dlott (the "HAN Litigation"). In the HAN Litigation, PatientPoint alleges claims for violations of the Lanham Act, trade secret misappropriation, tortious interference with contract and conversion.

**Answer:**     ContextMedia admits the allegations of paragraph 40, but denies any

liability to HAN.

41.     PatientPoint's claims in the HAN Litigation are based upon allegations that Context made false and misleading statements to physician practices about PatientPoint, which caused the practices to switch from PatientPoint to Context. In the HAN Litigation, PatientPoint also alleges that Context removed PatientPoint equipment from physician practices without PatientPoint's authorization and in one instance, obtained a PatientPoint media player, copied the entire contents of the player and uploaded the contents to Context's server. As PatientPoint alleges, the media player contained years' worth of PatientPoint's technology and content, which is invaluable to Context as a direct competitor to PatientPoint.

**Answer:** ContextMedia admits that PatientPoint has made such allegations but denies the truth of such allegations.

42. The HAN Litigation is ongoing, with fact discovery scheduled to complete on April 1, 2014.

**Answer:** ContextMedia admits the allegations of paragraph 42.

43. PatientPoint hired Hayes as an Executive Vice-President, Business Development Specialist in May 2012. Hayes was paid a base salary of $160,000, plus commission and other incidental benefits, including reimbursement of travel expenses. Throughout his employment with PatientPoint, Hayes traveled to Cincinnati for meetings and other work-related duties.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 43.

44. Hayes was responsible for obtaining sponsorship for PatientPoint's suite of print and digital networks. In this regard, Hayes was responsible for reaching out to sponsor contacts or their advertising agencies to determine what brands are seeking representation in the point-of-care industry. Hayes was responsible for pitching PatientPoint's business in all specialties who participated in PatientPoint's networks, including cardiology, primary care, diabetes and rheumatology.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 44.

45. As a Business Development Specialist, Hayes was the primary contact between PatientPoint and certain of its key sponsors. Hayes was responsible for growing PatientPoint's relationships with these sponsors, educating the sponsors about the value of PatientPoint's networks to particular brands and presenting research, pricing and contractual terms to the sponsors.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 45.

46. To this end, PatientPoint provided Hayes access to and use of its confidential information. This information includes key information regarding PatientPoint's practice networks, including the size, location and specialties of PatientPoint's physician practice members; demographic information regarding the practice's patient population; the physicians' prior experience with point-of-care education and the historical impact point-of-care education has on the physician's treatment methodologies; and PatientPoint's growth and expansion

12

strategy for its physician networks (for example, PatientPoint's plans to expand in certain geographical areas and plans to focus on physicians in certain specialties or practice groups).

**Answer:** ContextMedia states that the allegation that the information in question was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 46.

47.     PatientPoint also provided Hayes with key information regarding PatientPoint's sponsor acquisition and retention strategy, including PatientPoint's promised ROI, which is a key metric in determining the terms of PatientPoint's sponsor contracts; PatientPoint's proposed contracts with its sponsors including key pricing, duration and expiration and renewal terms, the sponsors' level of interest in point-of-care advertising; sponsors' marketing budgets; sponsors' preferred physician specialties or practices and other key information used by PatientPoint to maximize sponsorship revenue (together, with the information described in Paragraphs 27-35 and 46, the "PatientPoint Confidential Information").

**Answer:** ContextMedia states that the allegation that the information in question was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 47.

48.     Because some of the sponsors for whom Hayes was responsible were strategic accounts for PatientPoint, Hayes also had access to confidential information relating to new expansion strategies and brand acquisition and brand adherence strategies PatientPoint designed specifically to market PatientPoint's networks to those particular brands.

**Answer:** ContextMedia states that the allegation that the information in question was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 48.

ACTIVE 200737155v.3

49.     Hayes and other PatientPoint Business Development Professionals kept track of their marketing efforts through a pipeline document entitled the "PPT Opportunity Tracking Report." This pipeline report logged certain brands being targeted by PatientPoint, the estimated price of a proposed engagement, the likelihood of the sale, the term of the potential engagement contact information for the brand and the last conversations PatientPoint had with the brand's contact person.

**Answer:**     ContextMedia admits that Mr. Hayes utilized a document, the template of

which he developed at a prior company, to keep track of his marketing efforts, including the

specific information referenced in paragraph 49. ContextMedia lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations of paragraph 49.

50.     Hayes used PatientPoint's Confidential Information on a regular basis and typically accessed it remotely from his PatientPoint laptop computer, iPad, external storage devices and/or remotely through reports and spreadsheets accessible through PatientPoint's Virtual Private Network ("VPN").

**Answer:**     ContextMedia states that the allegation that the information in question

was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an

answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph

50.

51.     PatientPoint provided numerous resources and devices to Hayes to perform his job, including a laptop computer, iPad, iPhone, Company-issued credit card as well as administrative and technical support, among other things, to develop and nourish close relationships with PatientPoint's sponsors on behalf of PatientPoint and for PatientPoint's benefit. PatientPoint also paid for Hayes's travel expenses, internet service and other incidental costs.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 51.

52.     At the time he resigned from PatientPoint, Hayes was responsible for approximately 15 sponsor accounts, representing approximately 20 brands and potential brands to whom Hayes was attempting to pitch PatientPoint business. Collectively these brands represent millions of dollars in revenue to PatientPoint.

ACTIVE 200737155v.3

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 52.

## —HAYES'S NON-COMPETITION AGREEMENT—

53.    Because PatientPoint possesses certain Confidential Information and customer relationships that have been developed by the Company at considerable expense over a number of years, PatientPoint requires its employees to sign certain agreements to protect and preserve these business assets and goodwill. The agreements include Hayes's Employee Agreement, which contains certain post-employment non-competition, non-solicitation and confidentiality provisions.

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the factual allegations of paragraph 53. ContextMedia further states that the interpretation of the Employee Agreement is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies that Mr. Hayes's Employee Agreement is in effect and denies that it would be enforceable if it were.

54.    Hayes signed the Agreement on or about July 22, 2013 in connection with his employment with PatientPoint. (A true and correct copy of the Agreement is attached hereto as Exhibit A.)

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 54, other than through a review of the document itself.

55.    PatientPoint required Hayes to sign the Agreement as a condition of continued employment because the Company's Confidential Information and customer relationships are of considerable economic value to the Company. Because PatientPoint employed Hayes as a Business Development Specialist, PatientPoint reasonably expected and anticipated that Hayes would use the Company's Confidential Information in connection with his continued employment to maintain, foster and strengthen PatientPoint's sponsor relationships. But for his employment, Hayes would not know the Company's Confidential Information and would not have cultivated close relationships with PatientPoint's sponsors.

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 55.

ACTIVE 200737155v.3

56.     In order to protect these legitimate business interests, the Agreement prohibits Hayes, for twelve (12) months following the end of his employment with the Company, from being employed by any "Competitive Business," as defined in the Agreement. (Ex. A, Section I.) Context is specifically identified as a "Competitive Business" in the Agreement. (*Id.* at Section I(iii).)

**Answer:**     ContextMedia admits that the allegations of paragraph 56 purport to paraphrase sections of the Employee Agreement. ContextMedia further states that the interpretation of the Employee Agreement is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies that Mr. Hayes's Employee Agreement is in effect and denies that it would be enforceable if it were.

57.     The Employment Agreement also prohibits Hayes from soliciting, diverting or taking away or attempting to solicit, divert or take away any of the business, customers or patronage of PatientPoint or any affiliate or subsidiary thereof. (*Id.* at Section I.). Hayes is further prohibited from causing or attempting to cause any customers of PatientPoint or of any affiliate or subsidiary thereof to refrain from continuing their patronage" [sic] with PatientPoint. (*Id.*)

**Answer:**     ContextMedia admits that the allegations of paragraph 57 purport to paraphrase sections of the Employee Agreement. ContextMedia further states that the interpretation of the Employee Agreement is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies that Mr. Hayes's Employee Agreement is in effect and denies that it would be enforceable if it were.

58.     In order to protect PatientPoint's legitimate business interests, the Agreement prohibits Hayes, [sic] from directly or indirectly using or disclosing Confidential Information as defined in the Agreement. (*See* Exhibit A, Section II.)

**Answer:**     ContextMedia admits that the allegations of paragraph 58 purport to paraphrase sections of the Employee Agreement. ContextMedia further states that the interpretation of the Employee Agreement is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies that Mr. Hayes's Employee Agreement is in effect and denies that it would be enforceable if it were.

ACTIVE 200737155v.3

59.     Hayes expressly acknowledged that the terms of the Agreement are reasonable in all respects including the subject matter, duration, scope and the geographical area. (Exhibit A, Section III.) The Agreement is governed by Ohio Law. (*Id.* Section V(c).)

**Answer:**     ContextMedia admits that the allegations of paragraph 59 purport to paraphrase sections of the Employee Agreement. ContextMedia further states that the interpretation of the Employee Agreement is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies that Mr. Hayes's Employee Agreement is in effect and denies that it would be enforceable if it were.

### —CONTEXT'S EMPLOYMENT OF HAYES—

60.     PatientPoint terminated Hayes effective August 28, 2013. On that date, PatientPoint requested that Hayes return his PatientPoint-issued laptop and iPad to PatientPoint. Hayes ignored PatientPoint's request.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 60.

61.     On Friday, February 21, 2014, PatientPoint learned that Hayes had been hired by Context and was working as its Director of Strategic Sponsorships.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 61.

62.     In that role, Hayes's job is to solicit sponsors (including pharmaceutical companies) and their advertising agencies on behalf of Context to pitch Context's competitive point-of-care products and strategy. In doing so, Hayes is reaching out to the same sponsors and strategic accounts he solicited on behalf of PatientPoint.

**Answer:**     ContextMedia admits that Mr. Hayes is responsible for soliciting sponsors and their advertising agencies on behalf of ContextMedia, and understands that certain of the sponsors he has contacted for ContextMedia he previously contacted at PatientPoint. Answering further, ContextMedia understands that the majority of such "overlap" sponsors involved Mr.

ACTIVE 200737155v.3

Hayes contacting individuals with whom he had developed relationships prior to joining

PatientPoint. ContextMedia denies the remaining allegations of paragraph 62.

63.     Until PatientPoint can take fulsome discovery, PatientPoint must assume that Hayes has contacted and solicited sponsorship contracts from a number of PatientPoint sponsors, on behalf of Context.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations regarding what PatientPoint "must assume," but denies that any

of PatientPoint's assumptions are valid.

64.     On Monday, February 24, 2014, PatientPoint sent Hayes a cease and desist letter (the "Hayes Letter") requesting certain assurances that Hayes would comply with his non-competition obligations to PatientPoint and otherwise assure PatientPoint that its legitimate business interests would be protected. (Attached hereto as Exhibit B is the February 24, 2014 Hayes Letter). Among other things, the Hayes Letter demanded that Hayes return his PatientPoint laptop computer and iPad to PatientPoint's forensic expert within three (3) business days of his receipt of the Hayes Letter. The Hayes Letter also reminded Hayes of his obligations to preserve all potentially relevant evidence, including electronically stored information, stating:

> You are directed to take steps to preserve any communications, documents, or other information, in whatever form, that might be relevant to your departure from PatientPoint and/or your employment with Context and/or your Non-Compete. In particular, you should preserve all emails (including any attachments), text or instant messages, chat logs, social media postings, or other communications, whether in hard copy or electronic format, including email communications from your personal email account and any Context email account you now have, involving or relating to or referring to PatientPoint; PatientPoint employees; PatientPoint projects and customers; and PatientPoint documents and information, including confidential information. Also, if you copied or duplicated any documents or information of PatientPoint to any external device (e.g., external hard drive or USB flash drive), be sure to preserve such documents and information and the device(s) to which they were copied.

(Hayes Letter, Ex. B at 2.)

**Answer:**     ContextMedia admits that the quote was taken from the letter cited,

which—being in writing—speaks for itself.

65.     Also on February 24, 2014, PatientPoint sent correspondence by e-mail to Context's counsel in the HAN Litigation (the "Notification Letter"), notifying counsel of Hayes's non-compete obligations prohibiting Hayes from being employed by Context for one

18

year following Hayes's termination and enclosed a copy of the Hayes Letter. (Attached hereto as Exhibit C is the February 24, 2014 Notification Letter) PatientPoint also notified Context's counsel that PatientPoint believed that Hayes still possessed PatientPoint's laptop. (*Id.*)

  **Answer:**  ContextMedia admits that PatientPoint's counsel sent ContextMedia's counsel an email on February 24, 2014 regarding Mr. Hayes's laptop and purported non-compete obligations.

  66. On February 28, 2014, counsel for PatientPoint and Context had additional communications concerning the PatientPoint equipment. (Attached hereto as Exhibit D is the February 28, 2014 email exchange between counsel for Context and PatientPoint.) Upon information and belief, Hayes was alerted to the Notification Letter on or before February 28, 2014.

  **Answer:**  ContextMedia admits the allegations of paragraph 66.

  67. On March 1, 2014, Hayes signed a certified mail acknowledgment that he received the February 26, 2014 Hayes Letter.

  **Answer:**  ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 67.

  68. On March 5, 2014, PatientPoint received the equipment it had requested in the Hayes Letter. PatientPoint immediately began conducting forensic examination on Hayes's PatientPoint laptop and iPad.

  **Answer:**  ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 68.

### —HAYES'S UNLAWFUL USE AND RETENTION OF PATIENTPOINT PROPRIETARY AND CONFIDENTIAL INFORMATION AFTER BEING HIRED BY CONTEXT—

  69. Forensic examination has revealed that on February 28, 2014—two days after PatientPoint sent the Hayes Letter and, upon information and belief, after he had received notice of the Notification Letter—Hayes accessed and opened *over twenty files* containing highly confidential and proprietary information to PatientPoint. These files included, among others:

ACTIVE 200737155v.3

(a) A confidential July 2013 presentation PatientPoint made to Sponsor A[1] for Brand A, containing highly confidential information regarding:

(i) PatientPoint's individualized strategy for increasing patient use of Brand A and retention of Brand A as his/her prescription medication of choice;

(ii) PatientPoint's research regarding Brand A's ROI were it to contract with PatientPoint for point-of-care advertising;

(iii) Physician reach, including patient demographic information and patient visits, in PatientPoint's networks; and

(iv) PatientPoint's exclusivity terms, proposed pricing, ROI, individualized content proposals and contractual terms and expiration dates for Brand A.

**Answer:**　　　ContextMedia denies the allegations of paragraph 69.

70.　　Hayes did not have any legitimate business purpose to access and open the twenty some files containing this confidential information. Hayes accessed these files *after* PatientPoint e-mailed the Notification Letter to Context and *after* PatientPoint mailed the Hayes Letter directly to Hayes. The only reasonable conclusion is that Hayes had been using the PatientPoint confidential information residing on his PatientPoint laptop to assist him in his position with Context and to compete unfairly against PatientPoint. Hayes accessed these confidential files likely to save, transfer and preserve the files before he returned the PatientPoint laptop to PatientPoint. It is unknown, and requires additional discovery, whether these PatientPoint files reside on additional devices or were otherwise transferred elsewhere to Hayes's Context computer, Context's Google Apps account (which includes an e-mail service), other email accounts, cloud-based storage accounts or other shared network servers or resources owned or controlled by Context.

**Answer:**　　　ContextMedia denies the allegations of paragraph 70.

71.　　Armed with this information, Context now has an exact blueprint that it could use to target certain PatientPoint sponsors and brands, undercut PatientPoint's pricing and accelerate Context's sales, to PatientPoint's detriment.

**Answer:**　　　ContextMedia denies the allegations of paragraph 71.

72.　　Forensic examination has also revealed that on January 26, 2014, Hayes opened a version of his PatientPoint sales pipeline document, entitled "PPT _Opportunity Tracking Report 2014_082213.xls" from a removable flash storage device he attached to his PatientPoint laptop. The "PPT [PatientPoint] Opportunity Tracking Report" is Hayes's PatientPoint sales pipeline as

---

[1] To protect the confidential and proprietary nature of PatientPoint's sponsor clients and terms, PatientPoint's sponsors and their brands are described anonymously herein using the pseudonyms "Sponsor A," "Sponsor B," "Brand A," "Brand B" and so on.

ACTIVE 200737155v.3

of August 22, 2013, containing highly confidential information regarding Hayes's sales efforts with PatientPoint sponsors and potential sponsors.

**Answer:**     ContextMedia states that the allegation that the "PPT Opportunity

Tracking Report" contained confidential information of PatientPoint is a legal conclusion to

which no answer is required. To the extent an answer is required, ContextMedia denies the

allegation. ContextMedia lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations of paragraph 72.

73.     With this information, Hayes and Context can easily hone their pricing and network strategy specifically to pitch Context's business to the same sponsors using PatientPoint's strategy, while undercutting its pricing.

**Answer:**     ContextMedia denies the allegations of paragraph 73.

74.     The PatientPoint Opportunity Tracking Report contains information regarding PatientPoint's targeted sponsors, brands, dollar value to PatientPoint, contact names, advertising agency contact names, target close dates, likely ad program duration through 2015, exclusivity restrictions, status and PatientPoint action items.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 74.

75.     Forensic examination demonstrates that because Hayes opened the PatientPoint Opportunity Tracking Report directly from the external flash drive, the file resided on the flash drive as of January 26, 2014—after Hayes accepted employment with Context as its Director of Strategic Sponsorships. At the very least, PatientPoint needs access to the flash drive, in addition to any devices Hayes attached the flash drive to, to determine what Hayes did with this proprietary information after he accessed it.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 75.

76.     Armed with all of this information, Hayes and Context now have a direct roadmap to PatientPoint's targeted sponsors, pricing and contractual terms, ROI proposals, preferences, exclusivity preferences and other critical information. With this information, Context would be able to go directly to PatientPoint's sponsors, offer the same product and exclusivity terms and undercut PatientPoint's pricing to the sponsors. Beyond basic industry knowledge, this is precisely the kind of information that Context could use to its advantage to undercut

PatientPoint's sponsorship strategy and destroy months, and sometimes years, of PatientPoint's research, pricing methodology and marketing efforts.

**Answer:**     ContextMedia denies the allegations of paragraph 76.

### —HAYES'S COMMUNICATES WITH CONTEXT EMPLOYEES REGARDING STRATEGY DESIGNED TO UNDERMINE PATIENTPOINT—

77.     Indeed, this is precisely what Context and Hayes have done. Forensic examination shows that in early January 2014, Hayes exchanged e-mails with Context using his new Context e-mail address in which he provided Context with information specifically designed to harm PatientPoint:

•     On Thursday, January 9, 2014, at 11:16 a.m., Chris Hayes <chris.hayes@contextmediainc.com> wrote: Dan--please take a look at the attached doc which contains a **high-level comp intel around PatientPoint.** Let me know your thoughts and if OK I will have Vivian transfer over to PowerPoint slides for discussion with the team.

•     On January 9, 2014, at 4:41 p.m., Dan Schwartz, Context's Senior Vice-President of Strategic Accounts, responded to Hayes, stating "Hi Chris—I like this, would it be possible to have a slide on **where they're vulnerable and wht [sic] they struggle with**?"

•     On Friday, January 10, 2014 at 7:31 a.m., Hayes responded, "Dan—per your suggestion I modified the doc to include a section on **competitive weaknesses/opportunities for CMH.** Let me know if you have any additional comments./ questions."

(Forensically-recovered fragments of the above e-mail communications, recovered from Hayes's PatientPoint laptop, are attached hereto as Exhibit E.) (Emphasis added.)

**Answer:**     ContextMedia admits that the referenced emails contain the quoted

language. ContextMedia denies the remaining allegations of paragraph 77.

78.     Forensic examination has further revealed that in January 2014, Hayes sent another email to Dan Schwartz (Context's Senior Vice-President of Strategic Accounts), stating "Dan-please take a look at the attached doc which contains a high-level comp intel around PatientPoint. Let me know your thoughts and if OK I will have Vivian transfer over to PowerPoint slides for discussion with the team." (*See* Ex. E.) Hayes attached a document that may have originated from Context's Google Apps service, which includes Google Docs, Google Drive, Gmail and other tools. The only way to confirm or disprove this from a forensic standpoint is to have access to the data stored within Context's Google Apps account and the file upload history of that account.

**Answer:**     ContextMedia admits that the referenced email contains the quoted

language. ContextMedia lacks knowledge or information sufficient to form a belief about the

ACTIVE 200737155v.3

truth of the remaining allegations of paragraph 78 at this time.

79.     Because the document no longer resides on Hayes's laptop, PatientPoint cannot ascertain what is contained in the "PatientPoint_Comp Intel_010914.pdf." However, based on Hayes's cover email, the file likely contains "competitive intelligence" regarding PatientPoint used to compete with and undercut PatientPoint's sponsorship acquisition strategy.

**Answer:**      ContextMedia admits that the file in question contained "high level"

competitive intelligence regarding PatientPoint of the sort routinely used by competitors in a

competitive marketplace. ContextMedia denies the remaining allegations of paragraph 79.

80.     Sometime after he commenced employment with Context, Hayes sent another email to Dan Schwartz, stating "Dan—here is a list of other accounts that I **would like to see if we could have added to my portfolio.** These are accounts where I have existing relationships and can **reach out immediately.** Please let me know if you are OK with me taking these on." Hayes proceeded to list eight PatientPoint sponsor accounts.[2] (*See* Ex. E.) (Emphasis added.)

**Answer:**      ContextMedia admits the allegations of paragraph 80.

81.     Because PatientPoint does not have access to Hayes's Context e-mail account, its ability to uncover the extent of Hayes's conduct is somewhat limited. However, even the limited e-mail communications PatientPoint has been able to recover through forensic examination has revealed a dedicated strategy by Context and Hayes to undermine PatientPoint and target PatientPoint's strategic sponsor accounts.

**Answer:**      ContextMedia admits that PatientPoint does not have access to Mr.

Hayes's Context e-mail account. ContextMedia denies the remaining allegations of paragraph

81.

82.     Finally, forensic examination has also revealed that on January 7, 2014—during the time Hayes was communicating with Context employees regarding additional sponsor accounts and the "competitive intelligence" he designed to undercut PatientPoint, Hayes accessed Context's Wi-Fi network using his PatientPoint laptop. Because he accessed Context's Wi-Fi network, it is likely Hayes was working in Context's offices *using his PatientPoint laptop* to access PatientPoint files and transfer the files to Context.

**Answer:**      ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of whether Mr. Hayes accessed ContextMedia's WiFi network using his

PatientPoint computer. ContextMedia denies the remaining allegations of paragraph 82.

---

[2] The names of the accounts have been redacted to protect the identity of PatientPoint's sponsor accounts.

ACTIVE 200737155v.3

83. Forensic examination has also revealed that since his separation from PatientPoint, Hayes connected at least 21 separate flash drive devices to his PatientPoint laptop and that he connected at least six (6) separate flash drive devices on March 1, 2014—the day he transferred the laptop to Context's counsel to be returned to PatientPoint.

**Answer:** ContextMedia states that the forensic reports of each side's experts speak for themselves. To the extent an answer is required, ContextMedia denies the allegations of paragraph 83.

84. While Hayes finally returned his PatientPoint laptop and iPad, Hayes did not return any of the 21 flash drive devices that he connected to his PatientPoint laptop computer since his separation, including the six devices connected on March 1, 2014. Nor did Hayes inform the Company that he possessed the devices.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 84.

85. Finally, PatientPoint has since discovered that shortly before Hayes tendered the laptop to Context to return to PatientPoint, the "Downloads" folder on the laptop was modified.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 85.

86. Hayes and Context—vis-a-vis Hayes—are using PatientPoint confidential information to solicit PatientPoint sponsors and undermine PatientPoint's ability to compete fairly in the marketplace. Context has done so via Hayes, while engaged in the pending HAN Litigation in which PatientPoint has already asserted claims against Context for misappropriation of PatientPoint trade secrets and confidential information.

**Answer:** ContextMedia denies the allegations of paragraph 86.

87. Hayes is wrongfully appropriating PatientPoint's relationships with customers that executed contracts valued in the millions of dollars on an annual basis and the value of the confidential information misappropriated by Hayes on information and belief exceeds $75,000.

**Answer:** The allegations of paragraph 87 constitute legal conclusions to which no answer is required. To the extent an answer is required, ContextMedia denies the allegations of paragraph 87.

88.     The value of PatientPoint confidential information misappropriated by Hayes and damaged sponsor relationships far exceeds the sum or value of $75,000.

**Answer:**     ContextMedia denies the allegations of paragraph 88.

## COUNT I

### VIOLATION OF THE OHIO UNIFORM TRADE SECRETS ACT
### (Context and Hayes)

89.     PatientPoint restates and realleges by reference Paragraphs 1 through 88 as if fully restated herein.

**Answer:**     ContextMedia restates and realleges by reference its answers and other

responses to paragraphs 1 through 88.

90.     PatientPoint's Opportunity Tracking Report, the confidential presentations made to Sponsors A, B, C and D; physician list; sponsor and agency contact list; ROI information; pricing information; sponsor contract and exclusivity terms; information about PatientPoint's network physician reach and patient populations and all other information contained on Hayes's PatientPoint laptop and PatientPoint Confidential Information (collectively, the "PatientPoint Proprietary Information" [sic] qualify as trade secrets under the Ohio Uniform Trade Secrets Act, R.C. § 1333.61 *et seq.*

**Answer:**     ContextMedia denies the allegations of paragraph 90.

91.     PatientPoint takes reasonable efforts to safeguard and maintain the secrecy of its trade secrets, including the PatientPoint Proprietary Information. Access to this information is restricted, and PatientPoint take [sic] measures to protect the information, including by requiring its sponsors and potential sponsors (including Sponsor A and others) to execute Non-Disclosure Agreements before PatientPoint gives presentations or otherwise provides information to the sponsors; restricting access to the information to only certain employees in PatientPoint's Business Development department and other senior management; password protecting its servers and network on which the information is stored; and restricting physical access to PatientPoint's servers and offices.

**Answer:**     ContextMedia denies the allegations of paragraph 91.

92.     The PatientPoint Proprietary Information was and is secret, except that Hayes wrongfully absconded with copies of it and, upon information and belief, disclosed it to Context.

**Answer:**     ContextMedia denies the allegations of paragraph 92.

ACTIVE 200737155v.3

93.     As detailed above, PatientPoint derives substantial economic value from the secrecy of the PatientPoint Proprietary Information in the form of a competitive advantage over other persons and entities in PatientPoint's industry, such as Context.

**Answer:**     ContextMedia denies the allegations of paragraph 93.

94.     As detailed above, the PatientPoint Proprietary Information has been the subject of efforts that were and are reasonable under the circumstances to protect its secrecy.

**Answer:**     ContextMedia denies the allegations of paragraph 94.

95.     The PatientPoint Proprietary Information is not known to others in the industry or the general public.

**Answer:**     ContextMedia denies the allegations of paragraph 95.

96.     Hayes was under contractual, common-law and statutory duties to maintain the secrecy of the PatientPoint Proprietary Information.

**Answer:**     ContextMedia denies the allegations of paragraph 96.

97.     Based on Hayes's post-termination activities of (i) accessing PatientPoint's Proprietary Information *after* being asked to return his PatientPoint laptop; (ii) working for Context in the same position he had while with PatientPoint; (iii) logging on to Context's Wi-Fi network with his PatientPoint laptop; (iv) communicating with Context employees about PatientPoint's "vulnerabilities" and "struggles" and developing a "PatientPoint Competitive Intel" document; (v) refusing to provide complete and accurate assurances concerning his post-PatientPoint activities, PatientPoint reasonably believes Hayes is using PatientPoint Proprietary Information to compete with and undermine PatientPoint.

**Answer:**     ContextMedia denies the allegations of paragraph 97.

98.     On information and belief, Hayes has used PatientPoint Proprietary Information to solicit the same strategic accounts in his PatientPoint pipeline, including Sponsors A, B, C and D.

**Answer:**     Upon information and belief, ContextMedia denies the allegations of

paragraph 98.

99.     On information and belief, Hayes has disclosed some or all of the PatientPoint Proprietary Information to Context or has made use of that information.

**Answer:**     Upon information and belief, ContextMedia denies the allegations of

paragraph 99.

ACTIVE 200737155v.3

100.     By intentionally deleting, corrupting or altering files contained on his PatientPoint laptop before tendering it for third party forensic examination, Hayes has destroyed evidence of further use or misappropriation of PatientPoint Proprietary Information.

**Answer:**     Upon information and belief, ContextMedia denies the allegations of

paragraph 100.

101.     Hayes's and Context's conduct has been willful and malicious. Accordingly, PatientPoint is entitled to exemplary damages pursuant to R.C. § 1333.63(B)

**Answer:**     ContextMedia denies the allegations of paragraph 101.

102.     In addition, PatientPoint has incurred and will continue to incur investigative, attorney's and other fees, expenses and costs associated with determining the extent of Hayes's and Context's wrongdoing, and PatientPoint is thus entitled to recover same pursuant to R.C. § 1333.64(C), in addition to monetary damages.

**Answer:**     ContextMedia denies that ContextMedia is entitled to any relief.

ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the

remaining allegations of paragraph 102.

103.     The actual and/or threatened use and/or disclosure of PatientPoint's trade secrets to a competitor of PatientPoint's, including Context, on information and belief, has caused and will cause irreparable harm to PatientPoint, and PatientPoint is thus entitled to entry of an injunction pursuant to R.C. 1333.20.

**Answer:**     ContextMedia denies the allegations of paragraph 103.

104.     PatientPoint will continue to be irreparably injured and otherwise damaged by Hayes's misappropriation of PatientPoint's trade secrets, and PatientPoint will not have an adequate remedy at law for this irreparable injury if injunctive relief is not entered.

**Answer:**     ContextMedia denies the allegations of paragraph 104.

## COUNT II – BREACH OF CONTRACT
### (Hayes)

105.     PatientPoint restates and realleges Paragraph 1 through 104 as and [sic] for this Paragraph of Count II.

**Answer:**     ContextMedia restates and realleges by reference its answers and other

responses to paragraphs 1 through 104.

27

106.    The Agreement is a valid and legally enforceable contract that Hayes entered into freely and without duress.

**Answer:**    ContextMedia denies the allegations of paragraph 106.

107.    In exchange for his commitment to be bound by the Agreement, Hayes received adequate and sufficient consideration, including, without limitation, employment, access to and use of PatientPoint's confidential information and trade secrets, and direct contact and dealings with the Company's customers. Hayes also received a salary, participation in a Commission Plan, reimbursement of travel expenses, eligibility to participate in PatientPoint's health and dental insurance plans, eligibility to participate in PatientPoint's 401(k) program, paid time-off, and certain other benefits set forth in his offer letter.

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of whether Mr. Hayes received a salary, participation in a Commission Plan,

reimbursement of travel expenses, eligibility to participate in PatientPoint's health and dental

insurance plans, eligibility to participate in PatientPoint's 401(k) program, paid time-off, and

certain other benefits set forth in his offer letter. ContextMedia denies the remaining allegations

of paragraph 107.

108.    PatientPoint has at all times performed and fulfilled its obligations under the Agreement.

**Answer:**    Upon information and belief, ContextMedia denies the allegations of

paragraph 108.

109.    Hayes breached and continues to breach Sections I and II of the Agreement by taking employment with Context and soliciting PatientPoint's strategic sponsor accounts on behalf of Context.

**Answer:**    ContextMedia denies the allegations of paragraph 109.

110.    The foregoing breaches and continuing breaches have proximately caused and, unless restrained and enjoined, will continue to cause PatientPoint immediate and irreparable harm, damage and injury for which PatientPoint has no adequate remedy at law.

**Answer:**    ContextMedia denies the allegations of paragraph 110.

111.    By signing the Agreement, Hayes has expressly acknowledged that, upon a breach of the non-competition provision, PatientPoint shall be entitled to an injunction against

28

him prohibiting further breach. Such relief is in addition to any other remedies provided by law or equity. (Exhibit A, Section III.)

> **Answer:** ContextMedia denies the allegations of paragraph 111.

## TORTIOUS INTERFERENCE WITH CONTRACT
### (Context)

112. PatientPoint restates and realleges by reference Paragraphs 1 through 111 as if fully restated herein.

> **Answer:** ContextMedia restates and realleges by reference its answers and other

responses to paragraphs 1 through 111.

113. As alleged above, PatientPoint entered into the Agreement with Hayes.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 113.

114. As alleged above, the Agreement is a valid and binding contracts between PatientPoint and Hayes.

> **Answer:** ContextMedia denies the allegations of paragraph 114.

115. As described above, Context knew, and knows, of the existence of PatientPoint's Agreement with Hayes.

> **Answer:** ContextMedia admits that it learned of the existence of the Employee

Agreement when it received the letter from PatientPoint's counsel at the end of February 2014.

116. As alleged above, the Agreement prohibits Hayes from being employed by Context for a period of one year following Hayes's separation from PatientPoint.

> **Answer:** ContextMedia denies the allegations of paragraph 116.

117. Context's employment of Hayes, in particular, during the pendency of the HAN Litigation is a willful and material breach of the Agreement.

> **Answer:** ContextMedia denies the allegations of paragraph 117.

118. Context engaged in this conduct intentionally and to procure a breach of the contracts by Hayes, which contract was executed in Ohio and is governed by Ohio law.

> **Answer:**     ContextMedia denies the allegations of paragraph 118.

119.    Context lacked privilege and had no justification for attempting to procure a breach of the contracts.

> **Answer:**     ContextMedia denies the allegations of paragraph 119.

120.    Context's interference with the Agreement was willful and malicious.

> **Answer:**     ContextMedia denies the allegations of paragraph 120.

121.    PatientPoint has been injured by Context's conduct and is entitled to damages, including punitive damages, and injunctive relief for Context's tortious interference.

> **Answer:**     ContextMedia denies the allegations of paragraph 121.

ACTIVE 200737155v.3

## ADDITIONAL DEFENSES

### First Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Second Defense

Plaintiff's claims are barred by the doctrine of laches.

March 31, 2014            CONTEXTMEDIA, INC.

           By:     _/s/ Thomas F. Hankinson_
                   One of its attorneys

Richard J. O'Brien (admitted _pro hac vice_)
Charles K. Schafer (admitted _pro hac vice_)
Jason A. Cairns (_pro hac vice_ motion pending)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
E-mail:  robrien@sidley.com
E-mail:  cschafer@sidley.com
E-mail:  jcairns@sidley.com
Facsimile:  (312) 853-7036

Cole D. Bond (Ohio Bar #0078530)
Thomas F. Hankinson (Ohio Bar #0088367)
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6400
Facsimile: (513) 579-6457
Email: cbond@kmklaw.com
thankinson@kmklaw.com

ACTIVE 200737155v.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2014, a copy of the foregoing Defendant ContextMedia's Answer to Complaint, was filed using the Court's CM/ECF electronic filing system, which will send notification to all counsel of record registered with the Court's filing system.

<u>/s/ Thomas F. Hankinson</u>
Attorney for Defendants

ACTIVE 200737155v.3