UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
SOUTHERN DIVISION

| | |
|---|---|
| PATIENTPOINT NETWORK SOLUTIONS, LLC, an Ohio Limited Liability Company | |
| Plaintiff, | Civil Action No. 1:14 cv 226 |
| v. | Judge Black |
| CONTEXTMEDIA, INC., an Illinois Corporation, and CHRISTOPHER HAYES, an individual | |
| Defendants. | |

## DEFENDANT CONTEXTMEDIA'S ANSWER
## TO AMENDED VERIFIED COMPLAINT

Defendant ContextMedia, Inc., ("ContextMedia") for its answer to the amended verified complaint of Plaintiff PatientPoint Network Solutions, LLC, ("PatientPoint") states as follows:

## NATURE OF ACTION

1.      This is a case of misappropriation of trade secrets, unfair competition and violation of common law and statutory duties of confidentiality by a former employee of PatientPoint and his new employer Context, a direct competitor of PatientPoint, under Ohio statute and common law. Until his separation on August 28, 2013, Hayes was a Senior Vice President, Business Development specialist at PatientPoint. PatientPoint recently learned that since the time Hayes separated from PatientPoint, and *after* he became employed by Context, Hayes accessed numerous files containing highly sensitive and confidential PatientPoint information critical to PatientPoint's marketing and business development strategies.

**Answer:**      ContextMedia denies the first sentence of this paragraph. Upon information and belief, ContextMedia denies that Mr. Hayes committed any improper acts as alleged in this paragraph. ContextMedia admits that Mr. Hayes currently works for ContextMedia. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 1.

     2.      PatientPoint and Context are direct competitors engaged in the business of delivering health-related educational material in print and digital format (including related services) to physician practices throughout the United States. PatientPoint and Context provide the content and all hardware and software used to display the content to the physician practices, at the "point-of-care," free of charge. PatientPoint and Context earn their revenue by charging sponsors who place ads that are included within PatientPoint's and Context's educational content.

         **Answer:**      ContextMedia admits the allegations of paragraph 2.

     3.      PatientPoint is currently in litigation with Context in this District. In that litigation, PatientPoint has alleged a claim for misappropriation of PatientPoint's trade secrets, among other claims, based upon Context's conduct in intentionally accessing, copying and downloading all of the files contained on a PatientPoint media player that was wrongfully shipped to Context's offices. PatientPoint recently learned that Context hired Hayes and believes it did so to further compete unfairly with PatientPoint in the point of care industry.

         **Answer:**      ContextMedia admits that PatientPoint is currently in litigation with ContextMedia in the Southern District of Ohio, that PatientPoint has alleged a claim for misappropriation of PatientPoint's trade secrets in that litigation, and that ContextMedia hired Christopher Hayes in January 2014. ContextMedia denies the remaining allegations of paragraph 3.

     4.      Until his termination on or about August 28, 2013, Hayes was a key employee responsible for marketing and selling PatientPoint's point-of-care network and services to sponsors. In connection with his dealings with PatientPoint's sponsorship clients, Hayes had access to highly confidential information and trade secrets relating to PatientPoint's current and future business models, research methodology, sponsorship confidential information, sponsorship acquisition and pricing strategy and revenue structure, among other things.

         **Answer:**      ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the exact contours of Mr. Hayes's employment relationship with PatientPoint. The remaining allegations—regarding whether information was "confidential" or constituted "trade secrets"—constitute legal conclusions to which no answer is required. To the extent an answer is required, ContextMedia denies those allegations of paragraph 4.

     5.      Forensic examination of Hayes's PatientPoint laptop has revealed that after Hayes separated from PatientPoint, Hayes accessed PatientPoint's confidential and proprietary

information pertaining to its current and potential pipeline of sponsor accounts, communicated with Context about his PatientPoint accounts that he wanted to add to his Context portfolio and reach out to "immediately," accessed Context's Wi-Fi network and its cloud-based "Google Apps" account using his PatientPoint computer, accessed his Context e-mail account from his PatientPoint computer and attached over *twenty* portable USB flash drive devices to his PatientPoint computer.

**Answer:**    ContextMedia admits that Mr. Hayes requested that he be given a number

of accounts when he joined ContextMedia, only some of which were accounts that he was

actually assigned at ContextMedia. To its understanding, only some of the accounts requested by

Mr. Hayes were accounts that he was assigned while at PatientPoint. ContextMedia lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations

of paragraph 5, but forensic investigation into those issues continues.

6.    Forensic examination also has revealed that data was deleted or moved from the PatientPoint computer before it was returned to PatientPoint for forensic examination, thereby potentially destroying or altering discoverable information related to PatientPoint's allegations of Hayes's and Context's misappropriation and use of PatientPoint's confidential information. Several files appear to have been deleted or moved the day before Hayes acknowledged receiving written notice from PatientPoint to preserve all potential evidence in this matter.

**Answer:**    ContextMedia admits that some data appears to have been deleted or

moved from Mr. Hayes's PatientPoint computer before it was returned to PatientPoint for

forensic examination. ContextMedia denies the remaining allegations of paragraph 6.

7.    When PatientPoint offered employment to Hayes in May 2012, it conditioned on Hayes's execution of a standard "Teammate" Agreement. The Teammate Agreement contained a 12-month covenant not to compete and a non-disclosure provision prohibiting Hayes as "Employee" from using, disclosing or appropriating any PatientPoint "Confidential Information" (as defined in the Teammate Agreement). However, Hayes consistently ignored PatientPoint's requests that he sign the Teammate Agreement until he finally signed another version of the Agreement in July 2013.

**Answer:**    ContextMedia understands that Mr. Hayes executed a Teammate

Agreement with PatientPoint in July 2013, 14 months after he began working for PatientPoint,

and approximately one month before he was terminated. ContextMedia further states that the

interpretation of the Teammate Agreement is a legal conclusion to which no answer is required.

To the extent an answer is required, ContextMedia denies those allegations of paragraph 7.

8. In August 2013, PatientPoint terminated Hayes for performance-related reasons, including failing to fulfill his sales goals. Shortly after PatientPoint terminated Hayes, it requested that Hayes return his PatientPoint-issued laptop and iPad to PatientPoint, and sent Hayes a pre-paid UPS shipping label to do so. Hayes ignored PatientPoint's requests.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 8.

9. In December 2013—despite being engaged in litigation with PatientPoint— Context hired Hayes as "Director of Strategic Sponsorships" in December 2013. Given the extent of PatientPoint's confidential information in Hayes's possession and the similarities in his new role at Context, Hayes is likely to have used and/or is using PatientPoint confidential information to the advantage of Context and the detriment of PatientPoint. Hayes has already solicited several key PatientPoint accounts on behalf of Context.

**Answer:** ContextMedia admits that it is engaged in litigation with PatientPoint and that it hired Mr. Hayes as "Director of Strategic Sponsorships." ContextMedia denies the remaining allegations and insinuations of paragraph 9.

10. Upon discovering that Hayes had begun employment with Context, PatientPoint wrote to Hayes in late February 2014, again demanding the return of Hayes's PatientPoint laptop and iPad, reminding him of his continuing obligations under the Agreement and demanding assurances that he would comply with those obligations.

**Answer:** ContextMedia admits that PatientPoint's outside counsel wrote Mr. Hayes a letter in late February 2014, regarding certain issues. That letter, being in writing, speaks for itself. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegation that PatientPoint sent its letter "[u]pon discovering that Hayes had begun employment with Context."

11. At the same time it wrote to Hayes, PatientPoint also notified Context's litigation counsel in writing, to inform Context of Hayes's contractual obligations. PatientPoint also notified Context that PatientPoint believed Hayes still possessed his PatientPoint laptop.

**Answer:** ContextMedia admits that PatientPoint notified ContextMedia's litigation

counsel in writing of Mr. Hayes's purported contractual obligations and notified ContextMedia

that PatientPoint believed Mr. Hayes possessed his PatientPoint laptop computer.

12.     After PatientPoint wrote to Hayes and demanded return of its equipment, Hayes accessed at least twenty documents from his PatientPoint-issued laptop that contained a significant amount of PatientPoint confidential information and trade secrets. Forensic examination has also revealed that since the time Hayes began working for Context, Hayes accessed versions of a key sales pipeline document from his laptop and from an external storage device he attached to the laptop, communicated with Context employees regarding information about where PatientPoint is "vulnerable" and what it "struggles with," provided Context with "competitive intelligence" about Context and accessed Context's Wi-Fi network using his PatientPoint laptop.

**Answer:**     ContextMedia admits that Mr. Hayes communicated with ContextMedia

employees regarding non-confidential views of PatientPoint's struggles and vulnerability in a

"high level" competitive intelligence document. ContextMedia lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations of paragraph 12.

13.     Hayes has accessed and has likely used, transferred and/or copied a significant number of PatientPoint documents onto multiple portable electronic storage devices since the commencement of his employment with Context. Given the nature and extent of his activities, the only reasonable conclusion is that he is using and/or disclosing PatientPoint confidential information and trade secrets to actively solicit business from PatientPoint's sponsors on behalf of Context and to otherwise unfairly compete against PatientPoint.

**Answer:**     ContextMedia denies the allegations of paragraph 13.

14.     After it received notice from PatientPoint regarding Hayes's non-compete obligations to PatientPoint, Context failed to respond or provide any assurances with respect to Hayes's employment. Their conduct is especially concerning to PatientPoint given that PatientPoint and Context are currently engaged in litigation based upon PatientPoint's allegations of unfair competition and misappropriation of trade secrets by Context.

**Answer:**     ContextMedia admits that it is currently engaged in litigation with

PatientPoint based upon PatientPoint's allegations of unfair competition and misappropriation of

trade secrets. ContextMedia denies the remaining allegations of paragraph 14.

15.     Thus, in order to mitigate additional harm until the full extent of Hayes's and Context's access to and/or use of PatientPoint's confidential information can be determined, PatientPoint seeks injunctive relief prohibiting Hayes and Context from using or disclosing any

documents or information of PatientPoint for any purpose. PatientPoint also seeks damages based on (a) Hayes's and Context's misappropriation of PatientPoint's confidential and proprietary information, including its trade secrets; and (b) potential spoliation of evidence necessary to allow PatientPoint to determine the scope of Hayes's and Context's conduct; and (c) Hayes's violation of his statutory confidentiality obligations contained in O.R.C. § 1333.81. Given the willful and malicious nature of Defendants' conduct, PatientPoint also seeks recovery of exemplary damages, its attorneys' fees and its costs of suit, to the fullest extent under the law.

> **Answer:** ContextMedia admits that PatientPoint seeks such relief but denies that

PatientPoint is entitled to any relief.

## THE PARTIES

16. PatientPoint is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio. PatientPoint's sole member is PatientPoint Holdings, Inc., which is incorporated under the laws of the State of Delaware and has its principal place of business in Ohio.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 16.

17. Hayes is an individual whose domicile is in Dublin, Pennsylvania. Hayes is currently employed by Context as its Director of Strategic Sponsorships.

> **Answer:** ContextMedia admits the allegations of paragraph 17.

18. ContextMedia is an Illinois corporation which is incorporated under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois.

> **Answer:** ContextMedia admits the allegations of paragraph 18.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

> **Answer:** ContextMedia admits the allegations of paragraph 19, based on

PatientPoint's allegations concerning the citizenship of the parties, and admits that PatientPoint

is seeking in excess of $75,000, but denies that PatientPoint is entitled to any damages.

20. This Court has personal jurisdiction over Hayes because Hayes purposefully

availed himself of the benefits and protection of Ohio law by traveling to Ohio in connection with his employment at PatientPoint. U.S.C.A. Const. Amend. 14; Const. Art. 1, § 6; Ohio R.C.§ 2307.382.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 20.

21.     Context purposefully availed itself of the benefits and protection of Ohio law by transacting business in this state and engaging in the foregoing tortious acts with respect to PatientPoint's contractual relationships in Ohio.

**Answer:**     ContextMedia admits that it availed itself of the benefits and protections of Ohio law by transacting business in the state. ContextMedia denies the remaining allegations of paragraph 21.

22.     Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2) because a substantial part of the events giving rise to PatientPoint's claims occurred in Ohio.

**Answer:**     ContextMedia admits the allegations of paragraph 22.

## GENERAL ALLEGATIONS

### —PATIENTPOINT'S BUSINESS—

23.     PatientPoint is, among other things, engaged in the business of "point of care" education, that is, delivering educational, health-related content to physician practices through waiting rooms or examination rooms throughout the United States. Over the last 25 years, PatientPoint has been one of the leading companies in the point-of-care industry and one of the primary innovators in the business of delivering health-related educational content directly to physician offices at the point of care.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 23.

24.     PatientPoint's educational offerings are broadcast to or available in print in physician waiting rooms and medical examination rooms around the country (collectively, the "Practices"). More than 61,000 primary care and specialty doctors and more than 700 hospitals subscribe to PatientPoint's content.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 24.

25. PatientPoint provides its physician practice members with a media player and flat-panel television that displays their content in physician waiting rooms. The media player contains PatientPoint's content and software that allow PatientPoint's content to be displayed and updated through an Internet connection managed by PatientPoint's home offices. PatientPoint also provides brochures and other print-based content to practices that are displayed in waiting rooms and exam rooms.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 25.

26. PatientPoint provides health-related educational content in a number of subject areas, including without limitation, rheumatology, diabetes, and cardiology. PatientPoint provides its specialized content through the following networks: the Arthritis Care Network, or "ACN" (rheumatology) and the Primary Care Network, or "PCN" (diabetes and cardiology).

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 26.

27. PatientPoint provides its content to the vast majority of Practices free of charge. Rather than receiving its funding from the Practices where its content is placed, PatientPoint's funding comes in the form of sponsorships from organizations and companies who support and actively encourage patient health education. A significant portion of PatientPoint's sponsorship funding comes from health-focused and consumer facing companies seeking to educate patients about medications that address conditions treated by physicians in PatientPoint's networks. Sponsorship funding is primarily based upon the number of Practices and physicians using PatientPoint's content on a monthly basis.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 27.

—PATIENTPOINT'S SPONSORSHIP STRATEGY—

28. PatientPoint's method of identifying and onboarding sponsors can take years to develop. PatientPoint first identifies sponsor companies and the brands such companies are seeking to market. In some cases, PatientPoint identifies the advertising agencies the sponsor companies work with to determine whether the representative companies are seeking to expand their brands' footprint at the point-of-care. PatientPoint then determines the marketing strategies and budgets employed by the sponsor companies to ascertain the proposed advertising strategy to be included in PatientPoint's educational content.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 28.

29.     PatientPoint also conducts research on its target sponsor brands to determine information regarding the physician practices and patient population such brands are seeking to pursue; the brands' budgets and sales plans, which can be dependent on a number of factors, including evolving marketing strategies, industry regulations and patent expiration; the brands' exclusivity preferences—that is, the extent they are willing to place ads alongside a competitor's ads—and overall marketing budgets and willingness to invest in point-of-care advertising.

        **Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 29.

30.     Finally, PatientPoint conducts industry-specific research or Return on Investment ("ROI") propositions to brands, which is an extremely complex and specific calculation that is honed over several years based upon computation methodologies, research on brands' marketing budgets and strategies and other proprietary information.

        **Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 30.

31.     All of the foregoing information takes months, and sometimes years, to research and compile. After PatientPoint thoroughly vets, collects and assembles its research, it is then able to design individualized proposals that target each sponsor brand and provide key information about PatientPoint's physician networks and patient population.

        **Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 31.

32.     If a brand decides to invest with PatientPoint, it executes a confidential contract, the negotiation and terms of which are not disclosed outside of PatientPoint and the brand.

        **Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 32.

33.     To reach the brands, PatientPoint hires sales/marketing professionals and provides these employees with key information regarding PatientPoint's brands, the size and scope of its physician networks, the target patient population of the physicians in PatientPoint's networks and its revenue and growth strategy, among other things. PatientPoint provides this information to its employees to allow them to target their sales efforts on those companies who will most value the service and content PatientPoint offers to the Practices in its member network.

        **Answer:**        ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 33.

34.     PatientPoint's sales personnel have access to confidential information relating to the Practices in PatientPoint's networks; PatientPoint's pricing and sales information; contractual terms with sponsors; research and information on the rules and regulations governing its sponsors; strategies regarding patient education on particular brands; strategies on how to ensure patient adherence to the brands and contact information for sponsors and potential sponsors. Much of this information is maintained and accessed through private and secure, remote access, file servers and web-based portals (e.g. Salesforce.com) and business software applications that generate reports and spreadsheets and other compilations accessible through password protected log-in authorizations.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 34.

35.     In order to effectively compete in the marketplace, PatientPoint has invested substantial time, effort, money and other resources cultivating its sponsor relationships and gaining insight into sponsor regulatory and other requirements, needs, habits and preferences. Through these and other efforts, PatientPoint has gained key insights with respect to regulations, preferences and the treatment strategies of PatientPoint's physician Practices in order to maintain, foster and strengthen its sponsor relationships. In addition, personnel in PatientPoint's sales operations work closely with sponsors to effectively promote and market their brands to PatientPoint's various networks.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 35.

36.     PatientPoint invests heavily in its confidential information and sponsor relationships because they are crucial good will to the Company's stability, growth and competitive advantage. As one of the oldest companies in the point of care industry, PatientPoint has expended significant time and money to discover and refine this information.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 36.

—**PATIENTPOINT'S COMPETITION WITH CONTEXT**—

37.     Context was founded in approximately 2007, almost twenty years after PatientPoint began doing business in the point-of-care industry. Initially, Context focused on diabetes education but, like PatientPoint, began focusing on rheumatology and primary care in approximately early 2011.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegation of when PatientPoint began doing business. ContextMedia

admits the remaining allegations of paragraph 37.

38.     PatientPoint and Context are direct competitors. Like PatientPoint, Context delivers educational, health-related content to physician practices at the point of care, focusing on diabetes, rheumatology and cardiology (amongst other specialties). Context also does not charge its physician practices for its content, but derives its revenue from pharmaceutical and other companies who display their advertising in between segments of educational health-related programming.

**Answer:**     ContextMedia admits the allegations of paragraph 38 except that it denies

doing so "[l]ike PatientPoint" and denies that it never charges physicians for its content.

39.     PatientPoint and Context, therefore, compete in two critical respects: (1) they target member Practices who specialize in rheumatology, diabetes and cardiology (amongst other specialties) to join their respective networks; and (2) they market their point-of-care product to pharmaceutical and other companies who sell treatments addressing the rheumatoid, diabetic, cardiac and other conditions treated by physicians in their respective networks.

**Answer:**     ContextMedia admits the allegations of paragraph 39.

40.     Frequently, PatientPoint and Context target the same Practices given the overlap in the specialties represented in their respective networks.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 40.

41.     In August 2012, PatientPoint instituted litigation against Context in a case entitled *Healthy Advice Networks, LLC, n/k/a PatientPoint v. ContextMedia, Inc.,* Case No. 12-CV-610, pending before the Honorable Susan Dlott (the "HAN Litigation"). In the HAN Litigation, PatientPoint alleges claims for violations of the Lanham Act, trade secret misappropriation, tortious interference with contract and conversion.

**Answer:**     ContextMedia admits the allegations of paragraph 41, but denies any

liability to HAN.

42.     PatientPoint's claims in the HAN Litigation are based upon allegations that Context made false and misleading statements to physician practices about PatientPoint, which caused the practices to switch from PatientPoint to Context. In the HAN Litigation, PatientPoint also alleges that Context removed PatientPoint equipment from physician practices without PatientPoint's authorization and in at least one instance, obtained a PatientPoint media player, copied the entire contents of the player and uploaded the contents to Context's server. As PatientPoint alleges, the media player contained years' worth of PatientPoint's technology and content, which would be valuable to Context as a direct competitor to PatientPoint.

**Answer:**       ContextMedia admits that PatientPoint has made such allegations but

denies the truth of such allegations.

**—HAYES'S OBLIGATIONS TO PATIENTPOINT AND HIS AWARENESS OF THOSE OBLIGATIONS—**

43.       On or around April 11, 2011, Hayes contacted a PatientPoint employee, to inquire about potential job opportunities at PatientPoint. According to a resume submitted by Hayes at the time, he was at the time working for Healthcare Regional Marketing ("HRM"), which was not a competitor of PatientPoint. Prior to working for HRM, Hayes worked for a competitor of PatientPoint, WebMD. Upon information and belief, Hayes had a non-compete agreement with WebMD which had expired by the time he joined PatientPoint.

**Answer:**       ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 43.

44.       After discussions and interviews with PatientPoint, Hayes was extended a formal written offer on May 21, 2012. Because PatientPoint possesses certain confidential information and customer relationships that have been developed by the Company at considerable expense over a number of years, PatientPoint requires its employees – including Hayes – to sign certain agreements to protect and preserve these business assets and goodwill.

**Answer:**       ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 44.

45.       At the time he was hired, PatientPoint sent Hayes an offer letter setting forth the terms of his employment with PatientPoint. (A true and correct copy of the May 21, 2012 offer letter (hereafter, "Offer Letter") is attached as Exhibit 1.) In the Offer Letter, PatientPoint specified that "It is a condition of employment that you sign the attached **Teammate Agreement** which outlines our position on confidentiality and non-compete conditions." (Exhibit 1 at p. 2.) (Emphasis in original.)

**Answer:**       ContextMedia admits that the quote was taken from the Teammate

Agreement cited, which—being in writing—speaks for itself. ContextMedia lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph

45.

46.       After receiving the Offer Letter, Hayes advised PatientPoint that he would get back to it shortly with a decision. On May 24, 2012, Hayes emailed PatientPoint "to formally accept Health Advice's most recent employment offer dated May 21, 2012."

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 46.

47. Hayes was aware that it was a condition of his employment with PatientPoint that he sign the Teammate Agreement and he was aware that the Teammate Agreement outlined PatientPoint's position on confidentiality and non-compete obligations.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 47.

48. PatientPoint hired Hayes as an Executive Vice-President, Business Development Specialist in May 2012. Hayes was paid a base salary of $160,000, plus commission and other incidental benefits, including reimbursement of travel expenses.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 48.

49. Hayes was aware that PatientPoint required all of its employees to sign the Teammate Agreement containing confidentiality and non-compete provisions. Shortly after he was hired, Hayes brought a candidate, Stephanie Alessandrini, to PatientPoint, who PatientPoint eventually hired. On August 24, 2012, PatientPoint e-mailed an offer letter to Ms. Alessandrini, which attached the same version of the Teammate Agreement it had asked Hayes to sign. The Teammate Agreement contained the same confidentiality, non-disclosure, non-competition and non-solicitation provisions contained in the standard PatientPoint Teammate Agreement. Mr. Hayes was copied on the e-mail to Ms. Alessandrini. Thus, as of the time he was hired and merely three months later, Hayes was aware of his confidentiality and non-compete obligations to PatientPoint.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 49.

50. The Teammate Agreement set forth Hayes's confidentiality and non-disclosure obligations and contained a 12-month post-employment non-competition and non-solicitation provision. The Teammate Agreement – and the confidentiality, non-disclosure and restrictive covenant obligations contained therein – was a standard agreement PatientPoint required all of its employees to sign at the time.

**Answer:** ContextMedia states that the interpretation of the Teammate Agreement is a legal conclusion to which no answer is required. To the extent an answer is required,

ContextMedia denies those allegations of paragraph 50. ContextMedia lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph

50.

     51.    The Teammate Agreement provides in pertinent part:

> This Agreement is intended to protect the short- and long-term interests of HAN [n/k/a PatientPoint], its employees and its clients. HAN has customers and conducts its business throughout the United States. HAN wishes to obtain the services of Employee and Employee wishes to provide services to HAN and its clients. **HAN has developed and will continue to develop certain trade secrets and proprietary methods for doing business and will continue to obtain confidential information from its clients. Employee will have access to and be exposed to this information. It is essential to HAN that this information be protected from disclosure to third parties.**

(Teammate Agreement, attached hereto as Exhibit 2.)  (Emphasis added.)

    <u>**Answer:**</u>    ContextMedia admits that the quote was taken from the Teammate

Agreement cited, which—being in writing—speaks for itself.

    52.    The Teammate Agreement contained a 12-month post-employment restrictive covenant provision prohibiting Hayes from being employed by a competitive business in the point-of-care industry, including, specifically Context. (Exhibit 2 at 2.) The Teammate Agreement also prohibited Hayes from soliciting any "business, customer or patronage of HAN" and from causing or attempting to cause any customers of HAN to refrain from continuing their patronage. (*Id.*)

    <u>**Answer:**</u>    ContextMedia states that the interpretation of the Teammate Agreement is

a legal conclusion to which no answer is required. To the extent an answer is required,

ContextMedia denies those allegations of paragraph 52.

    53.    The Teammate Agreement also contained a non-disclosure provision which stated in pertinent part:

> Employee shall never, directly or indirectly, use, disseminate, disclose, convert or appropriate any of HAN's "Confidential Information" without first obtaining the prior written consent of HAN. "Confidential Information" shall mean any of HAN's trade secrets (as that term is defined in Ohio Revised Code Section 1333.61(D) or subsequently revised or enacted versions of that statute), secret or proprietary information, new product ideas, data or data bases, scientific or

technical information, procedures, forms, checklists, software, marketing or business plans, financial plans, financial information, customer lists, list of customer's or client's accounts, supplier's lists, secret or proprietary information of HAN's clients and all other information or matters of a confidential nature disclosed to or known by Teammate or relating to HAN's business or its customers and/or suppliers, but "Confidential Information" shall not include any information that is in the possession of Employee as of the ate [sic] of this agreement without obligation of confidentiality.

(Teammate Agreement, Exhibit 2 at p .2.)

      **Answer:**     ContextMedia admits that the quote was taken from the Teammate

Agreement cited, which—being in writing—speaks for itself.

     54.     After Hayes accepted his offer and began his employment with PatientPoint, PatientPoint asked Hayes to sign and return his Teammate Agreement. However, Hayes repeatedly ignored PatientPoint's requests.

      **Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 54.

     55.     In May 2013, PatientPoint's VP of Human Resources, Meg Paul, e-mailed Hayes and requested that he send her a signed copy of his June 2012 Employee Agreement. Ms. Paul stated, "Chris—I was doing an audit of all personnel files and I found that your signed Employee Agreement is missing. **Recall that this was part of the required new hire paperwork that was sent to you with your offer letter.** If you have the original (or a signed copy of the original) that you could send me either via scan/email or fax that would work. If you no longer have the one that was sent with your offer letter, I've attached one for you to sign and return."

      **Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 55.

     56.     Hayes ignored Ms. Paul's request. In June and early July 2013, PatientPoint repeatedly requested that Hayes sign and return an Employee Agreement. Hayes ignored PatientPoint's requests and gave no explanation for his repeated refusal to sign the Employee Agreement. Finally, on July 22, 2013, after being told by the Company's General Counsel and Chief Financial Officer that he must sign his agreement, Hayes signed and returned the Employee Agreement while in Cincinnati for a sales team meeting. (Attached as Exhibit 3 is a true and correct copy of the July 22, 2013 signed Employee Agreement.)

      **Answer:**     ContextMedia understands that Mr. Hayes executed a Teammate

Agreement with PatientPoint in July 2013, 14 months after he began working for PatientPoint,

and approximately one month before he was terminated. ContextMedia lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph

56.

57.     PatientPoint required Hayes to sign the Employee Agreement as a condition of his
employment because the Company's Confidential Information and customer relationships are of
considerable economic value to the Company. Because PatientPoint employed Hayes as a
Business Development Specialist, PatientPoint reasonably expected and anticipated that Hayes
would use the Company's Confidential Information in connection with his employment to
maintain, foster and strengthen PatientPoint's sponsor relationships. But for his employment,
Hayes would not know the Company's Confidential Information and would not have cultivated
close relationships with PatientPoint's sponsors.

**Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 57.

58.     In order to protect PatientPoint's legitimate business interests, the Employee
Agreement prohibits Hayes, from directly or indirectly using or disclosing Confidential
Information as defined in the Agreement. (See Exhibit 3, Section II.)

**Answer:**     ContextMedia states that the interpretation of the Employee Agreement is

a legal conclusion to which no answer is required. To the extent an answer is required,

ContextMedia denies those allegations of paragraph 58.

59.     Hayes expressly acknowledged that the terms of the Employee Agreement are
reasonable in all respects including the subject matter, duration, scope and the geographical area.
(Exhibit A, Section III.) The Agreement is governed by Ohio Law. (Id. Section V(c).)

**Answer:**     ContextMedia states that the interpretation of the Employee Agreement is

a legal conclusion to which no answer is required. To the extent an answer is required,

ContextMedia denies those allegations of paragraph 59.

60.     As an employee of an Ohio-based company, Hayes is also bound by Ohio Revised
Code 1333.81, which states:

> Confidentiality of information. No employee of another, who in the course and
> within the scope of his employment receives any confidential matter or
> information, shall knowingly, without the consent of his employer, furnish or
> disclose such matter or information to any person not privileged to acquire it.

O.R.C. ¶ 1333.81.

**Answer:**      ContextMedia admits that the quote was taken from Ohio Revised Code

§ 1333.81 cited, which—being in writing—speaks for itself. ContextMedia states that the

interpretation of Ohio Revised Code § 1333.81 is a legal conclusion to which no answer is

required.

### —HAYES'S EMPLOYMENT WITH PATIENTPOINT—

61.      During his time at PatientPoint, Hayes was responsible for obtaining
sponsorship for PatientPoint's suite of print and digital networks. In this regard, Hayes was
responsible for reaching out to sponsor contacts or their advertising agencies to determine what
brands are seeking representation in the point-of-care industry. Hayes was responsible for
pitching PatientPoint's business in all specialties who participated in PatientPoint's networks,
including cardiology, primary care, diabetes and rheumatology.

**Answer:**      ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 61.

62.      Hayes was the primary contact between PatientPoint and certain of its key
sponsors. Hayes was responsible for growing PatientPoint's relationships with these sponsors,
educating the sponsors about the value of PatientPoint's networks to particular brands and
presenting research, pricing and contractual terms to the sponsors.

**Answer:**      ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 62.

63.      To this end, PatientPoint provided Hayes access to and use of its confidential
information. This information includes key information regarding PatientPoint's practice
networks, including the size, location and specialties of PatientPoint's physician practice
members; demographic information regarding the practice's patient population; the physicians'
prior experience with point-of-care education and the historical impact point-of-care education
has on the physician's treatment methodologies; and PatientPoint's growth and expansion
strategy for its physician networks (for example, PatientPoint's plans to expand in certain
geographical areas and plans to focus on physicians in certain specialties or practice groups).

**Answer:**      ContextMedia states that the allegation that the information in question

was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an

answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph

63.

      64.     PatientPoint also provided Hayes with key information regarding PatientPoint's sponsor acquisition and retention strategy, including PatientPoint's promised ROI, which is a key metric in determining the terms of PatientPoint's sponsor contracts; PatientPoint's proposed contracts with its sponsors including key pricing, duration and expiration and renewal terms, the sponsors' level of interest in point-of-care advertising; sponsors' marketing budgets; sponsors' preferred physician specialties or practices and other key information used by PatientPoint to maximize sponsorship revenue (together, with the information described in Paragraphs 28-36 and 63, the "PatientPoint Confidential Information").

      **<u>Answer:</u>**     ContextMedia states that the allegation that the information in question

was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an

answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph

64.

      65.     Because some of the sponsors for whom Hayes was responsible were strategic accounts for PatientPoint, Hayes also had access to confidential information relating to new expansion strategies and brand acquisition and brand adherence strategies PatientPoint designed specifically to market PatientPoint's networks to those particular brands.

      **<u>Answer:</u>**     ContextMedia states that the allegation that the information in question

was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an

answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph

65.

      66.     PatientPoint kept track of the marketing efforts of Hayes and other PatientPoint Business Development Professionals through a pipeline document, which logged certain brands being targeted by PatientPoint, the estimated price of a proposed engagement, the likelihood of the sale, the term of the potential engagement, contact information for the brand, the stage of development and progress with the brand and the last conversations PatientPoint had with the brand's contact person, among other things. PatientPoint staff created and maintained the

pipeline report and sent updated versions of the report to the sales team, including Hayes.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 66.

67.     Upon information and belief, Hayes took information provided to him in the PatientPoint pipeline report and stored it in a separate pipeline report that he maintained, stored and updated remotely from his PatientPoint laptop. Hayes's pipeline report, entitled the "PatientPoint Opportunity Tracking Report," contained the same information and details contained in the highly confidential pipeline report PatientPoint maintained, updated and distributed to sales team members on a regular basis.

**Answer:** ContextMedia states that the allegation that the pipeline report in question was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 67.

68.     Hayes used PatientPoint's Confidential Information on a regular basis and typically accessed it remotely from his PatientPoint laptop computer, iPad, external storage devices and/or remotely through reports and spreadsheets accessible through PatientPoint's Virtual Private Network ("VPN").

**Answer:** ContextMedia states that the allegation that the information in question was—or is—"confidential" is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 68.

69.     PatientPoint provided numerous resources and devices to Hayes to perform his job, including a laptop computer, an iPad and administrative and technical support, among other things, to develop and nourish close relationships with PatientPoint's sponsors on behalf of PatientPoint and for PatientPoint's benefit. PatientPoint also paid for Hayes's travel expenses, and other incidental costs.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 69.

70.    PatientPoint sets sales targets for its sales employees to track performance goals. PatientPoint typically set these targets in the fourth quarter of the previous year. PatientPoint's sales employees were expected to meet or exceed these targets. PatientPoint and its sales team kept track of their collective progress towards their yearly sales targets. In April 2013, Hayes's supervisor, Linda Ruschau, was concerned about Hayes's performance because he was not close to reaching his sales to date and because he had failed to close any new business on behalf of PatientPoint. Ms. Ruschau was also concerned because she had received feedback from other team members about Hayes's lack of engagement.

        **Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 70.

71.    In April 2013, Ms. Ruschau met with Hayes to discuss his performance and develop a clear plan to help him achieve his sales goals. In that meeting, Hayes acknowledged that he had not been performing as expected, but that he was committed to improving his performance. Ms. Ruschau and Hayes discussed ways in which Hayes could improve his performance. Ms. Ruschau stressed to Hayes that the next several months would be critical to his ability to achieve sales goals and earn additional commissions.

        **Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 71.

72.    In late April 2013, PatientPoint discovered that Hayes had engaged a recruiter to help him find another job. Ms. Ruschau questioned Hayes about this and asked him if he wished to part ways with PatientPoint. Hayes explained that he was only trying to keep his opportunities open. Ms. Ruschau accepted Hayes's explanation and continued to support his employment and sales goals with PatientPoint. Ms. Ruschau stressed that Hayes would need to prove his commitment to PatientPoint in measurable ways, including by closing business.

        **Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 72.

73.    During the summer of 2013, however, Hayes's performance did not improve. In August 2013, PatientPoint decided to terminate Hayes's employment based upon his failure to satisfactorily perform his job duties and lack of engagement. On August 28, 2013, Ms. Ruschau and PatientPoint's Chief Financial Officer, Gregory Robinson, informed Hayes that PatientPoint was terminating his employment for performance-related reasons, due to his failure to meet his sales goals.

        **Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 73.

74.     Upon terminating Hayes, PatientPoint and Hayes negotiated a severance package, including benefits to Hayes and a release of claims. PatientPoint also requested that Hayes return his PatientPoint-issued laptop and iPad. On August 29, 2013, PatientPoint's VP of Human Resources, Meg Paul, confirmed this request by e-mailing Hayes a copy of a pre-paid UPS label to use to "return your ipad and laptop." (A true and correct copy of Ms. Paul's August 29 e-mail to Hayes is attached hereto as Exhibit 4.)  Hayes ignored PatientPoint's request.

**<u>Answer:</u>**     ContextMedia admits that the quote was taken from the email cited,

which—being in writing—speaks for itself. ContextMedia lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations of paragraph 74.

75.     At the time he separated from PatientPoint, Hayes was responsible for approximately 15 sponsor accounts, representing approximately 20 brands and potential brands to whom Hayes was attempting to pitch PatientPoint business. Collectively these brands represent millions of dollars in revenue to PatientPoint.

**<u>Answer:</u>**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 75.

### —CONTEXT'S EMPLOYMENT OF HAYES—

76.     On Friday, February 21, 2014, PatientPoint learned that Hayes had been hired by Context and was working as its Director of Strategic Sponsorships.

**<u>Answer:</u>**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 76.

77.     In that role, Hayes's job is to solicit sponsors (including pharmaceutical companies) and their advertising agencies on behalf of Context to pitch its competitive point-of-care products and strategy. In doing so, Hayes is reaching out to the same sponsors and strategic accounts he solicited on behalf of PatientPoint.

**<u>Answer:</u>**     ContextMedia admits that Mr. Hayes is responsible for soliciting sponsors

and their advertising agencies on behalf of ContextMedia, and understands that certain of the

sponsors he has contacted for ContextMedia he previously contacted at PatientPoint. Answering

further, ContextMedia understands that the majority of such "overlap" sponsors involved Mr.

Hayes contacting individuals with whom he had developed relationships prior to joining

PatientPoint. ContextMedia denies the remaining allegations of paragraph 77.

78.    Until PatientPoint can take fulsome discovery, PatientPoint must assume that Hayes has contacted and solicited sponsorship contracts from a number of PatientPoint sponsors, on behalf of Context.

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations regarding what PatientPoint "must assume," but denies that any

of PatientPoint's assumptions are valid.

79.    On Monday, February 24, 2014, PatientPoint sent Hayes a cease and desist letter (the "Hayes Letter") requesting certain assurances that Hayes would comply with his non-competition obligations to PatientPoint and otherwise assure PatientPoint that its legitimate business interests would be protected. (Attached hereto as <u>Exhibit 5</u> is the February 24, 2014 Hayes Letter). Among other things, the Hayes Letter demanded that Hayes return his PatientPoint laptop computer and iPad to PatientPoint's forensic expert within three (3) business days of his receipt of the Hayes Letter. The Hayes Letter also reminded Hayes of his obligations to preserve all potentially relevant evidence, including electronically stored information, stating:

> You are directed to take steps to preserve any communications, documents, or other information, in whatever form, that might be relevant to your departure from PatientPoint and/or your employment with Context and/or your Non-Compete. In particular, you should preserve all emails (including any attachments), text or instant messages, chat logs, social media postings, or other communications, whether in hard copy or electronic format, including email communications from your personal email account and any Context email account you now have, involving or relating to or referring to PatientPoint; PatientPoint employees; PatientPoint projects and customers; and PatientPoint documents and information, including confidential information. Also, if you copied or duplicated any documents or information of PatientPoint to any external device (e.g., external hard drive or USB flash drive), be sure to preserve such documents and information and the device(s) to which they were copied.

(Hayes Letter, Ex. B at 2.)

**Answer:**    ContextMedia admits that the quote was taken from the letter cited,

which—being in writing—speaks for itself.

80.    Also on February 24, 2014, PatientPoint sent correspondence by e-mail to Context's counsel in the HAN Litigation (the "Notification Letter"), notifying counsel of Hayes's non-compete obligations prohibiting Hayes from being employed by Context for one year following Hayes's termination and enclosed a copy of the Hayes Letter. (Attached hereto as

Exhibit 6 is the February 24, 2014 Notification Letter). PatientPoint also notified Context's counsel that PatientPoint believed that Hayes still possessed PatientPoint's laptop. (*Id.*)

**Answer:** ContextMedia admits that PatientPoint's counsel sent ContextMedia's counsel an email on February 24, 2014 regarding Mr. Hayes's laptop and purported non-compete obligations.

81. On February 28, 2014, counsel for PatientPoint and Context had additional communications concerning the PatientPoint equipment. (Attached hereto as Exhibit 7 is the February 28, 2014 email exchange between counsel for Context and PatientPoint.) Upon information and belief, Hayes was alerted to the Notification Letter on or before February 28, 2014.

**Answer:** ContextMedia admits the allegations of paragraph 81.

82. On March 1, 2014, Hayes signed a certified mail acknowledgment that he received the February 26, 2014 Hayes Letter. Upon information and belief, Hayes signed the acknowledgment form after accessing files on his PatientPoint laptop.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 82.

83. On March 5, 2014, PatientPoint received the equipment it had requested in the Hayes Letter. PatientPoint immediately began conducting forensic examination on Hayes's PatientPoint laptop and iPad.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 83.

### —HAYES'S UNLAWFUL USE AND RETENTION OF PATIENTPOINT PROPRIETARY AND CONFIDENTIAL INFORMATION AFTER BEING HIRED BY CONTEXT—

84. Forensic examination has revealed that on February 28, 2014—two days after PatientPoint sent the Hayes Letter and, upon information and belief, after he had received notice of the Notification Letter—Hayes accessed and opened *over twenty files* containing highly confidential and proprietary information to PatientPoint. These files included, among others:

(a) A confidential July 2013 presentation PatientPoint made to Sponsor A[1] for Brand A, containing highly confidential information regarding:

---

[1] To protect the confidential and proprietary nature of PatientPoint's sponsor clients and terms, PatientPoint's sponsors and their brands are described anonymously herein using the pseudonyms "Sponsor A," "Sponsor B," "Brand A," "Brand B" and so on.

> (i)   PatientPoint's individualized strategy for increasing patient use of Brand A and retention of Brand A as his/her prescription medication of choice;
>
> (ii)  PatientPoint's research regarding Brand A's ROI were it to contract with PatientPoint for point-of-care advertising;
>
> (iii) Physician reach, including patient demographic information and patient visits, in PatientPoint's networks; and
>
> (iv)  PatientPoint's exclusivity terms, proposed pricing, ROI, individualized content proposals and contractual terms and expiration dates for Brand A.
>
> (b)   A highly confidential list of physician practices identified as being of particular interest to a potential sponsor.
>
> (c)   Additional confidential presentations made to Sponsors B, C and D regarding various brands. These presentations contain PatientPoint's precise value proposition to the specific brands, which is based upon PatientPoint's research regarding what the brands are most interested in conveying, as well as PatientPoint's pricing strategy for each brand.
>
> (d)   A list of contacts, which would allow Hayes and Context to call each and every one of PatientPoint's sponsor and agency contacts to ramp up sales.

**Answer:**     ContextMedia denies the allegations of paragraph 84.

85.   Hayes did not have any legitimate business purpose to access and open the twenty some files containing this confidential information. Hayes accessed these files *after* PatientPoint e-mailed the Notification Letter to Context and *after* PatientPoint mailed the Hayes Letter directly to Hayes. The only reasonable conclusion is that Hayes had been using the PatientPoint confidential information residing on his PatientPoint laptop to assist him in his position with Context and to compete unfairly against PatientPoint. Hayes accessed these confidential files likely to save, transfer and preserve the files before he returned the PatientPoint laptop to PatientPoint. It is unknown, and requires additional discovery, whether these PatientPoint files reside on additional devices or were otherwise transferred elsewhere to Hayes's Context computer, Context's Google Apps account (which includes an e-mail service), other email accounts, cloud-based storage accounts or other shared network servers or resources owned or controlled by Context.

**Answer:**     ContextMedia denies the allegations of paragraph 85.

86.   Armed with this information, Context now has an exact blueprint that it could use to target certain PatientPoint sponsors and brands, undercut PatientPoint's pricing and accelerate Context's sales, to PatientPoint's detriment.

**Answer:** ContextMedia denies the allegations of paragraph 86.

87. Forensic examination has also revealed that on January 26, 2014, Hayes opened a version of his PatientPoint sales pipeline document, entitled "PPT _Opportunity Tracking Report 2014_082213.xls" from a removable flash storage device he attached to his PatientPoint laptop. The "PPT [PatientPoint] Opportunity Tracking Report" is Hayes's PatientPoint sales pipeline as of August 22, 2013, containing highly confidential information regarding Hayes's sales efforts with PatientPoint sponsors and potential sponsors.

**Answer:** ContextMedia states that the allegation that the "PPT Opportunity Tracking Report" contained confidential information of PatientPoint is a legal conclusion to which no answer is required. To the extent an answer is required, ContextMedia denies the allegation. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 87.

88. With this information, Hayes and Context can easily hone their pricing and network strategy specifically to pitch Context's business to the same sponsors using PatientPoint's strategy, while undercutting its pricing.

**Answer:** ContextMedia denies the allegations of paragraph 88.

89. The PatientPoint Opportunity Tracking Report contains information regarding PatientPoint's targeted sponsors, brands, dollar value to PatientPoint, contact names, advertising agency contact names, target close dates, likely ad program duration through 2015, exclusivity restrictions, status and PatientPoint action items.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 89.

90. Forensic examination demonstrates that because Hayes opened the PatientPoint Opportunity Tracking Report directly from the external flash drive, the file resided on the flash drive as of January 26, 2014—after Hayes accepted employment with Context as its Director of Strategic Sponsorships.

**Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 90.

91. Armed with all of this information, Hayes and Context now have a direct roadmap to PatientPoint's targeted sponsors, pricing and contractual terms, ROI proposals, preferences,

exclusivity preferences and other critical information. With this information, Context would be able to go directly to PatientPoint's sponsors, offer the same product and exclusivity terms and undercut PatientPoint's pricing to the sponsors. Beyond basic industry knowledge, this is precisely the kind of information that Context could use to its advantage to undercut PatientPoint's sponsorship strategy and destroy months, and sometimes years, of PatientPoint's research, pricing methodology and marketing efforts.

> **Answer:** ContextMedia denies the allegations of paragraph 91.

### —HAYES'S COMMUNICATES WITH CONTEXT EMPLOYEES REGARDING STRATEGY DESIGNED TO UNDERMINE PATIENTPOINT—

92. Indeed, this is precisely what Context and Hayes have done. Forensic examination shows that in early January 2014, Hayes exchanged e-mails with Context using his new Context e-mail address in which he provided Context with information specifically designed to harm PatientPoint:

- On Thursday, January 9, 2014, at 11:16 a.m., Chris Hayes <chris.hayes@contextmediainc.com> wrote: Dan--please take a look at the attached doc which contains a **high-level comp intel around PatientPoint.** Let me know your thoughts and if OK I will have Vivian transfer over to PowerPoint slides for discussion with the team.

- On January 9, 2014, at 4:41 p.m., Dan Schwartz, Context's Senior Vice-President of Strategic Accounts, responded to Hayes, stating "Hi Chris—I like this, would it be possible to have a slide on **where they're vulnerable and wht [sic] they struggle with**?"

- On Friday, January 10, 2014 at 7:31 a.m., Hayes responded, "Dan—per your suggestion I modified the doc to include a section on **competitive weaknesses/opportunities for CMH.** Let me know if you have any additional comments./ questions."

(Forensically-recovered fragments of the above e-mail communications, recovered from Hayes's PatientPoint laptop, are attached hereto as <u>Exhibit 8</u>.) (Emphasis added.)

> **Answer:** ContextMedia admits that the referenced emails contain the quoted

language. ContextMedia denies the remaining allegations of paragraph 92.

93. Forensic examination has further revealed that in January 2014, Hayes sent another email to Dan Schwartz (Context's Senior Vice-President of Strategic Accounts), stating "Dan-please take a look at the attached doc which contains a high-level comp intel around PatientPoint. Let me know your thoughts and if OK I will have Vivian transfer over to PowerPoint slides for discussion with the team." (*See* Ex. 8.) Hayes attached a document that may have originated from Context's Google Apps service, which includes Google Docs, Google

Drive, Gmail and other tools. The only way to confirm or disprove this from a forensic standpoint is to have access to the data stored within Context's Google Apps account and the file upload history of that account.

**Answer:**     ContextMedia admits that the referenced email contains the quoted

language. ContextMedia lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations of paragraph 93 at this time.

94.     Because the document no longer resides on Hayes's laptop, PatientPoint cannot ascertain what is contained in the "PatientPoint_Comp Intel_010914.pdf." However, based on Hayes's cover email, the file likely contains "competitive intelligence" regarding PatientPoint used to compete with and undercut PatientPoint's sponsorship acquisition strategy.

**Answer:**     ContextMedia admits that the file in question contained "high level"

competitive intelligence regarding PatientPoint of the sort routinely used by competitors in a

competitive marketplace. ContextMedia denies the remaining allegations of paragraph 94.

95.     Sometime after he commenced employment with Context, Hayes sent another email to Dan Schwartz, stating "Dan—here is a list of other accounts that **I would like to see if we could have added to my portfolio.** These are accounts where I have existing relationships and can **reach out immediately.** Please let me know if you are OK with me taking these on." Hayes proceeded to list eight PatientPoint sponsor accounts.[2] (*See* Ex. 8.) (Emphasis added.)

**Answer:**     ContextMedia admits the allegations of paragraph 95.

96.     Because PatientPoint does not have access to Hayes's Context e-mail account, its ability to uncover the extent of Hayes's conduct is somewhat limited. However, even the limited e-mail communications PatientPoint has been able to recover through forensic examination has revealed a dedicated strategy by Context and Hayes to undermine PatientPoint and target PatientPoint's strategic sponsor accounts.

**Answer:**     ContextMedia admits that PatientPoint does not have access to Mr.

Hayes's ContextMedia e-mail account. ContextMedia denies the remaining allegations of

paragraph 96.

97.     Finally, forensic examination has also revealed that on January 7, 2014—during the time Hayes was communicating with Context employees regarding additional sponsor accounts and the "competitive intelligence" he designed to undercut PatientPoint, Hayes accessed Context's Wi-Fi network using his PatientPoint laptop. Because he accessed Context's

---

[2] The names of the accounts have been redacted to protect the identity of PatientPoint's sponsor accounts.

Wi-Fi network, it is likely Hayes was working in Context's offices *using his PatientPoint laptop* to access PatientPoint files and transfer the files to Context.

     **Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of whether Mr. Hayes accessed ContextMedia's WiFi network using his

PatientPoint computer. ContextMedia denies the remaining allegations of paragraph 97.

     98.     Forensic examination has also revealed that since his separation from PatientPoint, Hayes connected at least 21 separate flash drive devices to his PatientPoint laptop and that he connected at least six (6) separate flash drive devices on March 1, 2014—the day he transferred the laptop to Context's counsel to be returned to PatientPoint.

     **Answer:**     ContextMedia states that the forensic reports of each side's experts speak

for themselves. To the extent an answer is required, ContextMedia denies the allegations of

paragraph 98.

     99.     When Hayes finally returned his PatientPoint laptop and iPad, Hayes did not return any of the 21 flash drive devices that he connected to his PatientPoint laptop computer since his separation, including the six devices connected on March 1, 2014. Nor did Hayes inform the Company that he possessed the devices.

     **Answer:**     ContextMedia lacks knowledge or information sufficient to form a belief

about the truth of the allegations of paragraph 99.

     100.     Although Hayes claims that, before returning the laptop to PatientPoint, he only saved from the laptop personal materials and materials he created for Context (and he did not save from the laptop any documents belonging to PatientPoint), PatientPoint's forensic examination calls into question these assertions. Indeed, according to the forensic expert engaged by counsel for Defendants admits [sic] that it might not be possible to re-create the exact circumstances of what took place in order to definitely determine what caused the creation and/or uploading of the files identified by PatientPoint's forensic expert.

     **Answer:**     ContextMedia admits that Mr. Hayes claims that, before returning the

laptop to PatientPoint, he only saved from the laptop personal materials and materials he

created for Context (and he did not save from the laptop any documents belonging to

PatientPoint). ContextMedia further admits that, according to its forensic expert, it "might" not

be possible to re-create the exact circumstances of what took place in order to definitively

28

determine what caused the creation and/or updating (not "uploading" as erroneously stated in the allegation) of the files identified by PatientPoint's forensic expert. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 100.

101.    Finally, PatientPoint has since discovered that shortly before Hayes tendered the laptop to Context to return to PatientPoint, the "Downloads" folder on the laptop was modified.

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 101.

102.    Upon information and belief, Hayes and Context—vis-à-vis Hayes—are using PatientPoint confidential information to solicit PatientPoint sponsors and undermine PatientPoint's ability to compete fairly in the marketplace.

**Answer:**    ContextMedia denies the allegations of paragraph 102.

103.    Hayes has solicited and/or is soliciting PatientPoint's customers that executed contracts valued in the millions of dollars on an annual basis.

**Answer:**    ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 103.

104.    The value of PatientPoint confidential information misappropriated by Hayes and damaged sponsor relationships far exceeds the sum or value of $75,000.

**Answer:**    ContextMedia denies the allegations of paragraph 104.

<u>**COUNT I**</u>

**VIOLATION OF THE OHIO UNIFORM TRADE SECRETS ACT**
**(Context and Hayes)**

105.    PatientPoint restates and realleges by reference Paragraphs 1 through 101 as if fully restated herein.

**Answer:**    ContextMedia restates and realleges by reference its answers and other responses to paragraphs 1 through 101.

106.    The information contained in the PatientPoint Opportunity Tracking Report, the

29

confidential presentations made to Sponsors A, B, C and D; physician list; sponsor and agency contact list; ROI information; pricing information; sponsor contract and exclusivity terms; information about PatientPoint's network physician reach and patient populations and all other information contained on Hayes's PatientPoint laptop and PatientPoint Confidential Information (collectively, the "PatientPoint Proprietary Information") qualify as trade secrets under the Ohio Uniform Trade Secrets Act, R.C. § 1333.61 *et seq.*

> **Answer:** ContextMedia denies the allegations of paragraph 106.

107. PatientPoint takes reasonable efforts to safeguard and maintain the secrecy of its trade secrets, including the PatientPoint Proprietary Information. PatientPoint requires all of its employees to sign a standard Teammate Agreement, which contains an explicit confidentiality and non-disclosure provision, along with a 12-month non-compete provision. At the time he was hired, PatientPoint informed Hayes that his execution of the Teammate Agreement was a condition of his employment. Hayes, however, refused to sign his Teammate Agreement for over one year until PatientPoint demanded that he sign a similar agreement in July 2013.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations that PatientPoint informed Mr. Hayes, at the time he was hired, that his execution of the Teammate Agreement was a condition of his employment and that Mr. Hayes refused to sign his Teammate Agreement for over one year. ContextMedia denies the remaining allegations of paragraph 107.

108. PatientPoint takes additional measures to protect its confidential information, including by requiring its sponsors and potential sponsors (including Sponsor A and others) to execute Non-Disclosure Agreements before PatientPoint gives presentations or otherwise provides information to the sponsors; restricting access to the information to only certain employees in PatientPoint's sales department and other senior management; password protecting its servers, VPN and network on which the information is stored; and restricting physical access to PatientPoint's servers and offices.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 108.

109. Upon terminating Hayes, PatientPoint requested that Hayes return his PatientPoint laptop and iPad and sent him a prepaid UPS shipping label to do so. Hayes ignored PatientPoint's request.

> **Answer:** ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 109.

110. The PatientPoint Proprietary Information was and is secret, except that Hayes wrongfully absconded with copies of it and, upon information and belief, disclosed it to Context.

**Answer:** ContextMedia denies the allegations of paragraph 110.

111. As detailed above, PatientPoint derives substantial economic value from the secrecy of the PatientPoint Proprietary Information in the form of a competitive advantage over other persons and entities in PatientPoint's industry, such as Context.

**Answer:** ContextMedia denies the allegations of paragraph 111.

112. As detailed above, the PatientPoint Proprietary Information has been the subject of efforts that were and are reasonable under the circumstances to protect its secrecy.

**Answer:** ContextMedia denies the allegations of paragraph 112.

113. The PatientPoint Proprietary Information is not known to others in the industry or the general public.

**Answer:** ContextMedia denies the allegations of paragraph 113.

114. As an employee of an Ohio-based company, Hayes is subject to O.R.C. 1333.81, which states, "No employee of another, who in the course and scope of his employment receives any confidential matter or information, shall knowingly, without the consent of his employer, furnish or disclose such matter or information to any person not privileged to acquire it."

**Answer:** ContextMedia admits that the quote was taken from Ohio Revised Code

§ 1333.81, which—being in writing—speaks for itself. ContextMedia states that the

interpretation of Ohio Revised Code § 1333.81 is a legal conclusion to which no answer is

required. ContextMedia lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations of paragraph 114.

115. Thus, Hayes was under contractual, common-law and statutory duties to maintain the secrecy of the PatientPoint Proprietary Information.

**Answer:** ContextMedia denies the allegations of paragraph 115.

116. Based on Hayes's post-termination activities of (i) accessing PatientPoint's Proprietary Information *after* being asked to return his PatientPoint laptop; (ii) working for Context in the same position he had while with PatientPoint; (iii) logging on to Context's Wi-Fi network with his PatientPoint laptop; (iv) communicating with Context employees about PatientPoint's "vulnerabilities" and "struggles" and developing a "PatientPoint Competitive

Intel" document; (v) refusing to provide complete and accurate assurances concerning his post-PatientPoint activities, PatientPoint reasonably believes Hayes is using PatientPoint Proprietary Information to compete with and undermine PatientPoint.

**Answer:** ContextMedia denies the allegations of paragraph 116.

117. On information and belief, Hayes has used PatientPoint Proprietary Information to solicit the same strategic accounts in his PatientPoint pipeline, including Sponsors A, B, C and D.

**Answer:** Upon information and belief, ContextMedia denies the allegations of paragraph 117.

118. On information and belief, Hayes has disclosed some or all of the PatientPoint Proprietary Information to Context or has made use of that information.

**Answer:** Upon information and belief, ContextMedia denies the allegations of paragraph 118.

119. By intentionally deleting, corrupting or altering files contained on his PatientPoint laptop before tendering it for third party forensic examination, Hayes has destroyed evidence of further use or misappropriation of PatientPoint Proprietary Information.

**Answer:** Upon information and belief, ContextMedia denies the allegations of paragraph 119.

120. Hayes's and Context's conduct has been willful and malicious. Accordingly, PatientPoint is entitled to exemplary damages pursuant to R.C. § 1333.63(B).

**Answer:** ContextMedia denies the allegations of paragraph 120.

121. In addition, PatientPoint has incurred and will continue to incur investigative, attorney's and other fees, expenses and costs associated with determining the extent of Hayes's and Context's wrongdoing, and PatientPoint is thus entitled to recover same pursuant to R.C. § 1333.64(C), in addition to monetary damages.

**Answer:** ContextMedia denies that PatientPoint is entitled to any relief. ContextMedia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 121.

122. The actual and/or threatened use and/or disclosure of PatientPoint's trade secrets

to a competitor of PatientPoint's, including Context, on information and belief, has caused and will cause irreparable harm to PatientPoint, and PatientPoint is thus entitled to entry of an injunction pursuant to R.C. § 1333.20.

       **Answer:**      ContextMedia denies the allegations of paragraph 122.

       123.     PatientPoint will continue to be irreparably injured and otherwise damaged by Hayes's misappropriation of PatientPoint's trade secrets, and PatientPoint will not have an adequate remedy at law for this irreparable injury if injunctive relief is not entered.

       **Answer:**      ContextMedia denies the allegations of paragraph 123.

## ADDITIONAL DEFENSES

### First Defense

PatientPoint's claims are barred by the doctrine of unclean hands.

### Second Defense

PatientPoint's claims are barred by the doctrine of laches.


May 12, 2014                                  CONTEXTMEDIA, INC.

                                      By:     /s/ *Thomas F. Hankinson*
                                              One of its attorneys

Richard J. O'Brien (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
Jason A. Cairns (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
E-mail: robrien@sidley.com
E-mail: cschafer@sidley.com
E-mail: jcairns@sidley.com
Facsimile: (312) 853-7036

Cole D. Bond (Ohio Bar #0078530)
Thomas F. Hankinson (Ohio Bar #0088367)
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
Email: cbond@kmklaw.com
Email: thankinson@kmklaw.com
Facsimile: (513) 579-6457

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on May 12, 2014, a copy of the foregoing Defendant ContextMedia's Answer to Amended Verified Complaint was filed using the Court's CM/ECF electronic filing system, which will send notification to all counsel of record registered with the Court's filing system.

<u>/s/ Thomas F. Hankinson</u>
Attorney for Defendants